Sidney MURRAY and Gladys Murray, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

STUCKEY'S INC. and PET Incorporated, Defendants.

No. C 85–4085.

United States District Court, N.D. Iowa, W.D.

Dec. 29, 1993.

**152**

Steven Clark Kohl and Percy L. Nymann, Nymann–Kohl, Sioux City, IA, for Sidney Murray and· Gladys Murray and all others similarly situated.

Gene R. LaSuer and Jean A. McNeil, Davis Hockenberg Wine Brown Koehn Shors, PC, Des Moines, IA, and John Renick, McMahon Berger, St. Louis, MO, for Stuckey's, Inc., and PET, Inc.

## ORDER

JARVEY, Chief United States Magistrate Judge.

This matter comes before the court pursuant to plaintiffs' December 6, 1993, motion to compel (docket number 302). The motion is granted in part and denied in part.

This discovery dispute arises out of a larger dispute over award of reasonable attorney fees to the prevailing plaintiffs in a suit under the Fair Labor Standards Act (FLSA) and 29 U.S.C. § 216(b). Defendants have resisted plaintiffs' fee claim both on the basis of the number of hours claimed and the hourly rate applied. Defendants' Brief in Support of Resistance to Renewed and Amended Motion to Determine Attorney Fees and Costs. With the present motion, plaintiffs seek to compel defendants to answer interrogatories concerning defendants' own attorney fees.

Plaintiffs propounded interrogatories to defendants seeking information concerning defendants' attorney fees.[1] Defendants objected to the interrogatories on the grounds that the information requested was subject to the attorney-client privilege, irrelevant, and protected as attorney work product. Plaintiffs argue that all of the information is relevant to a determination of the reasonableness of their attorney fee claim. The parties exchanged letters in an effort to resolve the dispute without intervention of the court. Those letters indicate that defendants have primarily asserted that the requested information is irrelevant and that disclosure is in the discretion of the court (Plaintiffs' Exhibits D and F). Defendants at one point offered to disclose the hourly rates only of Des

1. The interrogatories in question are as follows:
   *INTERROGATORY NO. 1:*
   Please disclose the name, address, and hourly rate(s) charged by all attorneys representing Defendants in this case from the time of the commencement of this action in 1985 up to and including the present.
   *INTERROGATORY NO. 2:*
   Please provide an itemized statement of all hours devoted to this action by all attorneys representing Defendants in this case from the time of the commencement of this action in 1985 up to and including the present time.

   *INTERROGATORY NO. 3:*
   Please list the total amounts of attorneys fees paid to and/or charged by each attorney representing Defendants in this matter from the time of the commencement of this action in 1985 up to and including the present.
   *INTERROGATORY NO. 4:*
   Please provide an itemized statement of all hours devoted to this action by in house counsel of Defendants in this action, from the time of the commencement of this action in 1985 up to and including the present time.

Moines counsel, but not the hourly rate of any other attorney nor the number of hours billed by any attorney (Plaintiffs' Exhibit D).

■ The United States Court of Appeals for the Third Circuit has recognized that evidence of fees and expenditures of other parties may be relevant to the issue of the reasonableness of the petitioner's fees, but leaves questions of discovery on this issue to the informed discretion of the district court. *See In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 587 (3d Cir.1984). "Although the contours of a fee petition are rather well-settled, there is less guidance on the proper scope of discovery, if any, in connection with those petitions." *Coalition to Save Our Children v. State Bd. of Educ.,* 143 F.R.D. 61, 64 (D.Del.1992) (quoting *In re First Peoples Bank Shareholders Litigation,* 121 F.R.D. 219, 223 (D.N.J.1988)). Whether discovery is appropriate depends, in part, on the objections raised by the opponent to the fee petition going to the reasonableness of the fee petition. *Id.* As noted above, defendants have resisted plaintiffs' fee claim both on the basis of the number of hours claimed and the hourly rate applied. Defendants' Brief in Support of Resistance to Renewed and Amended Motion to Determine Attorney Fees and Costs.

■ The court notes that "[a]bsent special circumstances, ... fee arrangements are not confidential professional communications protected by the attorney-client privilege." *In re Grand Jury Proceedings Subpoena To Testify To Wine,* 841 F.2d 230, 233 n. 3 (8th Cir.1988). Nor are such matters prepared in anticipation of litigation such that work product privilege would ordinarily apply.[2] The court therefore turns to the question of the relevance of information concerning defendants' attorney fees to plaintiffs' attorney fee claim.

■ In determining what information, if any, may be discoverable concerning opposing parties' attorney fees in support of the prevailing parties' claim of reasonable attorney fees, it is helpful to keep in mind how a reasonable fee is determined under 29 U.S.C. § 216(b). No fee may be awarded for services on an unsuccessful claim. *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). The court first multiplies the reasonable number of hours worked by the prevailing attorney on successful claims by the reasonable hourly rate. *Id.* at 433–34, 440, 103 S.Ct. at 1939–40, 1943. The hourly rate must "be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

■ The court concludes that, in light of these precedents, both the number of hours devoted to the case by defendants' attorneys and their hourly rates, to the extent that those rates reflect "the prevailing market rates in the relevant community," are relevant to plaintiffs' attorney fee claim. The court is not persuaded, however, that the hourly rates of all of defendants' attorneys is relevant to a determination of the "prevailing market rates in the relevant community." The court does not believe that the hourly rates prevailing in St. Louis are informative of the prevailing market rates in Iowa or in Sioux City. However, the court does not believe that prevailing rates in Sioux City or Des Moines depart so significantly from prevailing rates in other Iowa communities that the hourly rate of defendants' Des Moines attorney should be excluded from discovery. In fact, defendants have offered to disclose the hourly rate of their Des Moines counsel.

■ The hours expended by all attorneys, including in house counsel for the defendants, must be disclosed. It is unrealistic to base any comparison of hours expended only on the hours of defendants' local counsel, however involved he, she, or they may have been in

---

2. The work product privilege was designed to prevent "unwarranted inquiries into the files and mental impressions of an attorney" and recognizes that it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510–

11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); *In re Chrysler Motors Corp. Overnight Evaluation,* 860 F.2d 844, 846 (8th Cir.1988); *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987).

the litigation, when some significant share of the burden of investigating, researching, and prosecuting the matter has fallen on out-of-state or in house counsel.

■ Finally, only the hours expended on issues of the complaint on which plaintiffs prevailed are relevant to the court's determination of reasonable fees. *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). With these conclusions in mind, the court will fashion the following requirements for answering plaintiffs' fourth set of interrogatories:

(1) Where itemized statements are required, defendants need only disclose information pertinent to issues in plaintiffs' complaint on which plaintiffs prevailed. The itemization need only describe generally the activity involved, such as discovery, research, time in court, preparation of briefs, motions, or other filings, and travel time.

(2) More specifically, Interrogatory No. 1 must be answered in full, with the exception that the hourly rate(s) of out-of-state counsel need not be disclosed; Interrogatory No. 2 must be answered as described in (1) above; Interrogatory No. 3 must be answered to the extent of the total for itemized items; Interrogatory No. 4 must be answered to the extent described in (1) above.

The court recognizes that responding to these interrogatories as now required by the court may require a significant review of the records of defendants' attorneys. The court will therefore allow the parties a reasonable time within which to respond to the interrogatories.

Upon the foregoing,

IT IS ORDERED

That plaintiffs' December 6, 1993, motion to compel (docket number 302) is granted to the extent described above. Defendants shall provide appropriate answers to plaintiffs' fourth set of interrogatories within thirty (30) days of the date of this order.

Gene E. WEGNER, De Wegner, Minor Children, Chad Erick Wegner and Gina Marie Wegner, By Their Next Friend, Gene E. Wegner, Plaintiffs,

v.

CLIFF VIESSMAN, INC., Ed G. Kleinberg, and the Chicago & North Western Transportation Company, Defendants.

No. C 92–4068.

United States District Court, N.D. Iowa, W.D.

Jan. 24, 1994.

Leslie A. Gelhar, Krause Rollins, Minneapolis, MN, and Roxanne Conlin, Des Moines, IA, for Gene E. Wegner, De Wegner, Chad E. Wegner, and Gina M. Wegner.

Charles D. Hunter, Belin Harris Helmick Tesdell, Des Moines, IA, for Cliff Viessman, Inc.

Ed. G. Kleinberg, pro se.

Terrence D. Brown and Bruce E. Johnson, Gamble & Davis, Des Moines, IA, for Chicago & North Western Transp. Co.

### *ORDER*

JARVEY, Chief United States Magistrate Judge.

This matter comes before the court pursuant to plaintiffs' December 13, 1993, motion to compel discovery (docket number 40).

Defendant Cliff Viessman, Inc., resisted the motion on December 27, 1993. The motion is granted in part and denied in part.

## I. BACKGROUND

This lawsuit arose out of a motor vehicle collision on September 15, 1990, in which plaintiff Gene E. Wegner (Wegner) allegedly sustained serious and disabling personal injuries. The suit was brought by and on behalf of Gene Wegner and his family members (collectively "the Wegners") against various defendants, including Cliff Viessman, Inc. (Viessman), the owner of the semi-tractor trailer that struck the vehicle in which Wegner was riding, Wegner's employer, the Chicago & North Western Transportation Co. (C & NW), which had hired the vehicle in which Wegner was riding, and Ed G. Kleinberg (Kleinberg), the owner of the vehicle in which Wegner was riding.

Wegner's motion seeks to compel responses to Interrogatories Nos. 5 and 15, and responses to Requests for Production Nos. 8 and 15. These discovery requests seek information concerning Viessman's possible surveillance of the plaintiff and information concerning Viessman's remaining insurance coverage following settlement with other persons injured in the collision and various legal expenses. Viessman has objected to these discovery requests. The discovery requests and objections are presented in full in the margin.[1]

---

1. Interrogatory No. 5 and Request for Production No. 8 related to surveillance of Wegner by Viessman. The discovery requests and objections are as follows:

Interrogatory No. 5: Identify any person or agency employed by Defendant conducting personal or photographic surveillance of Plaintiff, specifying the date, time, place, duration and method of surveillance.

Answer: Counsel for defendant Cliff Viessman, Inc. objects to this interrogatory for the reason it improperly requests disclosure of the investigations, preparations and strategy and/or work product of this defendant and its counsel and requests discovery with respect to matters developed in anticipation of litigation or for trial. Moreover, the interrogatory is premature in that it seeks information for the purpose of aiding plaintiffs in avoiding impeachment. Defendants should not be required to provide plaintiffs an account of any surveillance activities because plaintiffs can testify accurately about their activities without needing information concerning surveillance.

Request for Production No. 8: If Defendant made or caused to be made any investigation of Plaintiff's background, activities, credit, character, reputation or the like since the date of the accident, attach a copy of any written report of such an investigation which was made; if photographic surveillance was involved, attach copies of any still photographs or motion pictures that were taken, or in lieu of supplying this response, state whether Defendant will permit Plaintiff to inspect these items.

Response: Counsel for defendant Cliff Viessman, Inc. objects to this request for the reason it improperly requests disclosure of the investigations, preparations and strategy and/or work product of this Defendant and its counsel and requests discovery with respect to matters developed in anticipation of litigation or for trial. Moreover, the request is premature in that it

## II. CONCLUSIONS OF LAW

### A. Discovery Of Surveillance Information

The issue presented herein as to the discoverability of surveillance conducted by a defendant concerning a plaintiff in a personal injury action is both interesting and philosophically complicated. These films are obviously gathered in anticipation of litigation or for trial and therefore constitute work product that need not be disclosed absent a showing of substantial need and an inability to gather the substantial equivalent without undue hardship. If the purpose of discovery is simply to learn the truth, plaintiff has no need for this information because the plaintiff knows better than anyone the extent of his or her disability. However, if the purpose of discovery is to learn what evidence is possessed by one's opponent, then surveillance films ought to be subject to discovery.

Very few published decisions, and no binding precedents, have addressed the discoverability of surveillance information. The published decisions uniformly compel discovery of the information, albeit often with limita-

seeks information for the purpose of aiding plaintiffs in avoiding impeachment. Defendants should not be required to provide Plaintiffs with information of investigation or surveillance activities concerning Plaintiffs because Plaintiff can testify accurately about their activities without needing information concerning investigation or surveillance. The following discovery requests pertain to insurance information.

Interrogatory No. 15: Identify each policy of insurance affording you coverage for any portion of the damages claimed by Plaintiffs in this case, including the limits of all such coverages available to pay Plaintiffs' damages, and the amounts of any available coverages which have already been expended.

Answer: Counsel for defendant Cliff Viessman, Inc. objects to this interrogatory for the reason it improperly requests disclosure of privileged and confidential information and for the further reason it exceeds the scope of discovery permitted by the Federal Rules of Civil Procedure. Without waiving the foregoing objections, defendant Cliff Viessman, Inc. answers this interrogatory, in part, by stating: At the time of the accident in question, Cliff Viessman, Inc. had a motor vehicle policy with a combined single limit of $1 million for any one accident or loss. In addition, Cliff Viessman, Inc. had a commercial excess liability policy with a combined single limit for any one motor vehicle incident of $4 million.

tions on timing of the disclosures.[2] The seminal decision is *Snead v. American Export–Isbrandtsen Lines, Inc.*, 59 F.R.D. 148 (E.D.Penn.1973), wherein a three-judge panel was confronted with the question of whether plaintiff could discover whether the defendant had conducted surveillance of the plaintiff. 59 F.R.D. 148, 149 (E.D.Penn.1973).

The *Snead* court found the surveillance films were "highly relevant—perhaps they will establish the most important facts in the entire case," and further that they were not protected by any privilege. *Id.* at 150. The films thus fell within the scope of discovery of *Fed.R.Civ.P.* 26. *Id.* The court next considered whether the surveillance films would be protected as work product under *Fed. R.Civ.P.* 26(b)(3). *Id.* The court concluded that the plaintiff was unable without undue hardship to obtain the substantial equivalent of surveillance motion pictures by other means because such materials are not available except from the one who took them. *Id.* The court then considered the "substantial need" prong of the test to overcome work product protection.

Request for Production No. 15: A true and correct copy of any other insurance policy, including excess liability policy, or off track vehicle agreement, or indemnification agreement with any other person, which could or would give Defendant coverage for any part of the claims made by Plaintiffs in this case, and for each such policy or agreement attach a copy of the declaration sheet and all endorsements effective at the time of the accident which is the subject matter of this litigation.

Response: See this Defendant's answer to your Interrogatory No. 15.

2. The court is aware of unpublished decisions from the federal district courts of Louisiana, Oregon, and New York which barred discovery of surveillance information on the ground that local rules prevented discovery of impeachment evidence. The court does not find these decisions persuasive or applicable.

Local Rule 18(b) for the Northern and Southern Districts of Iowa exempts exhibits essential to rebuttal or impeachment from the requirements of listing exhibits in the Final Pre–Trial Order and allowing opposing counsel to examine exhibits prior to trial. This local rule says nothing about the discoverability of surveillance information when a discovery request has been made before filing of the Final Pre–Trial Order.

The only time there will be substantial need to know about surveillance pictures will be in those instances where there would be a major discrepancy between the testimony the plaintiff will give and that which the films would seem to portray. By the same token this would be the only instance where there is a substantial need to withhold that information from plaintiff's counsel. If the discrepancy would be the result of the plaintiff's untruthfulness, the substantial need for his counsel to know of the variance can hardly justify making the information available to him. On the other hand, if the discrepancy would result from misleading photography, the necessary background information should be made available to the plaintiff's attorney so the fraud can be exposed. *It goes without saying that the means to impeach should not be the exclusive property of the defense.* Any rule to be formulated, therefore, must balance the conflicting interests of the plaintiff against the conflicting interests of the defendant and protect both insofar as it is possible to do so. In addition, the objectives of the discovery rules must be kept in mind so that a just and speedy determination of cases can be obtained.

I conclude these purposes can best be achieved by requiring the defense to disclose the existence of surveillance films or be barred from showing them at trial. If the defense has films and decides it wants to use them, they should be exhibited to the plaintiff and his counsel. If filed, supplementary interrogatories should be answered giving full information as to the details surrounding the taking of these pictures.

*Id.* at 151 (emphasis added). The court, however, chose to protect the impeachment value of the surveillance films by ordering that defendant be allowed to depose the plaintiff about the plaintiff's injuries, their effects, and the plaintiff's present disabilities before disclosure of the surveillance information. *Id.* The court ordered the disclosure to take place as close to the time of trial as possible, but before the final pre-trial conference. *Id.*

Similarly, in *Daniels v. National Railroad Passenger Corp.*, 110 F.R.D. 160 (S.D.N.Y. 1986), the court followed the procedures first suggested in *Snead*, requiring disclosure of surveillance information and films, but "only after the depositions of the plaintiff or other witnesses to be impeached, so that their testimony may be frozen." 110 F.R.D. 160, 161 (S.D.N.Y.1986). The court's rationale was that

[d]isclosure of any surveillance films or videotapes will not only allow plaintiff to review materials for authenticity and otherwise to prepare effectively for trial, but it may also encourage settlement of the suit, a legitimate function of pre-trial discovery. *See Martin v. Long Island Railroad Co.*, 63 F.R.D. 53, 54–55 (E.D.N.Y. 1974) (collects authorities and marshals arguments concerning production of impeachment surveillance films).

*Id.*

The district court in *Forbes v. Hawaiian Tug & Barge Corp.*, 125 F.R.D. 505 (D.Haw. 1989), also ordered disclosure of surveillance information and material as long as "defendant [had] the opportunity to secure a plaintiff's post-film, pre-revelation deposition." 125 F.R.D. 505, 508 (D.Haw.1989) (citing 8 C. Wright & A. Miller, Federal Practice and Procedure § 2015 (1970 & Supp.1988) and *Snead, supra*). The court in *Forbes* followed a similar rationale.

Generally, "materials that are primarily of an impeaching character" are protected from discovery. *Fed.R.Civ.P.* 26(b) advisory committee note; *see also* Rules of the United States District Court for the District of Hawaii 235–9(c). Nevertheless, while surveillance films made in connection with the defense of a personal injury action are ostensibly of an impeaching character, the weight of authority favors their discovery. *See Daniels v. Nat'l RailRoad Passenger Corp.*, 110 F.R.D. 160 (S.D.N.Y. 1986); *Martin v. Long Island Rail Road Co.*, 63 F.R.D. 53 (E.D.N.Y.1974); *Crist v. Goody*, 31 Colo.App. 496, 507 P.2d 478 (Colo.App.1972); *Zimmerman v. Superior Court*, 98 Ariz. 85, 402 P.2d 212 (Ariz. 1965). Reasons cited manifest concerns

for authenticity, encouraging settlement, avoiding unnecessary interruptions at trial, facilitating stipulations and admissions, and fairness. *See, e.g., Daniels,* 110 F.R.D. at 161; *Martin,* 63 F.R.D. at 54.

*Id.* at 507.[3]

The Fifth Circuit is the only United States Court of Appeals to address this question. In *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513 (5th Cir.1993), the plaintiff had asked the defendant by interrogatory whether the defendant had any still or motion pictures of the plaintiff taken before, on, or after the date of the occurrence of the alleged injury. *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 514 (5th Cir.1993). The defendant objected on the grounds of work-product protection, but nonetheless answered that there were no such tapes. *Id.* However, defendant did begin surveillance of plaintiff within two months of that response and never supplemented the discovery response. *Id.*

After reviewing the decisions discussed above, and other unpublished decisions, the United States Court of Appeals for the Fifth Circuit stated that

> [i]n the context of a defendant's surveillance of a personal injury plaintiff, the argument for non-disclosure is that the plaintiff seeks the disclosure of such evidence only when it will probably show that the injury is fabricated or exaggerated. In those cases, it has been said that the potential perjurer has "no cause to complain of surprise if defendants elect to disprove the case on trial instead of in the conference room." *Hikel v. Abousy,* 41 F.R.D. 152, 154 n. 1 (D.Md.1966) (citing *Thorne v. Good Humor Ice Cream Co.,* Daily Record (Sup.Ct. of Baltimore, March 26, 1964)). Although that argument has a certain logical appeal, we must recognize that it "pro-

ceeds on the premise that ... witnesses whose testimony is designed to impeach invariably have a monopoly on virtue and that evidence to which the attempted impeachment is directed is, without exception, fraudulent." *Boldt v. Sanders,* 261 Minn. 160, 111 N.W.2d 225, 227 (1961).

> That premise may well be a faulty one, because it flies directly in the face of the very purpose of discovery. The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial "less a game of blind man's b[l]uff and more a fair contest", *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success.

*Id.* at 516–17. The court also rejected decisions based on local rules prohibiting discovery of impeachment evidence because such rules cannot narrow the scope of discovery under the Federal Rules of Civil Procedure. *Id.* at 517.

The decision to mandate disclosure in *Chiasson* was ultimately based on a ground different from other cases. The court found that surveillance materials were at least in part "substantive evidence," or "[e]vidence which would tend to prove or disprove" losses and injuries, rather than "impeachment evidence," which is "offered to 'discredit a witness ... to reduce the effectiveness of [the witness's] testimony by bringing forth evidence which explains why the jury should not put faith in [the witness] or [the witness's] testimony.'" *Id.* at 517. The court concluded that

> [b]ecause the tape is, at the very least in part substantive, it should have been disclosed prior to trial, regardless of its impeachment value.

> impeaching character. These two types of materials [the other being income tax returns that are not privileged but often protected] merely illustrate the many situations, not capable of governance by precise rule, in which courts must exercise judgment.

---

3. This court does not find any such general prohibition on discovery of material "primarily of an impeaching character." Rather, the court finds that the advisory committee's notes to the 1970 amendments to *Rule* 26(b) state that
   the courts have in appropriate circumstances protected materials that are primarily of an

*Id.* at 517–18.[4]

The court finds that the weight of authority favors discoverability of surveillance information, principally because such information is probative of a critical issue in a personal injury case—the physical condition of the plaintiff. *Chiasson, supra,* at 517–18; *Snead, supra,* at 151. Disclosure of this information is consistent with the broad discovery allowed under the Federal Rules of Civil Procedure that makes a trial "less a game of blind man's b[l]uff and more a fair contest," *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success. *Chiasson, supra,* at 516–17. Discoverability of surveillance information will serve the collateral interests identified by other courts, including concerns for authenticity, encouraging settlement,[5] avoiding unnecessary interruptions at trial, facilitating stipulations and admissions, and fairness. *See, e.g., Forbes, supra,* at 507; *Daniels, supra,* at 161; *Martin, supra,* at 54.

Having found that surveillance information is otherwise discoverable, the court must consider whether work-product protection should nonetheless bar discovery. *Fed. R.Civ.P.* 26(b)(3); *Snead, supra,* at 150. Work product protection was designed to prevent "unwarranted inquiries into the files and mental impressions of an attorney" and recognizes that it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,*

329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); *In re Chrysler Motors Corp. Overnight Evaluation,* 860 F.2d 844, 846 (8th Cir.1988); *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). "Ordinary work product" is documents and tangible things prepared in anticipation of litigation or for trial by or for another party. Surveillance materials are certainly prepared in anticipation of litigation. The decision to conduct such surveillance and the manner in which it should be conducted, its targets, and its timing, says something about how a defense attorney investigates and prepares a case for trial. It is simply too great a stretch to say, however, that opinion work product is also thereby revealed.

Surveillance motion pictures are not available except from the one who took them. *Snead, supra,* at 150. Such surveillance, by its nature, fixes information available at a particular time and place under particular conditions, and therefore cannot be duplicated. The "substantial need" of the plaintiff for the material has less to do, in this court's opinion, with the need to address the potentially misleading elements of impeachment evidence, *Snead, supra,* at 151, and more to do with the right of the plaintiff to discover the evidence that exists within the defendant's possession that will be available for use at trial.

As a practical matter, requiring discovery of surveillance by defendants in personal injury cases will not jeopardize the ability of

---

The local rules of some jurisdictions bar discovery of impeachment material.