Danron GIBSON, a minor, by his parent and natural guardian Danier GIBSON, and Danier Gibson in her own right, Plaintiffs,

v.

The NATIONAL RAILROAD PASSENGER CORP., a/k/a Amtrak, Defendant.

Civil Action No. 96–5430.

United States District Court, E.D. Pennsylvania.

Feb. 10, 1997.

Thomas J. Duffy, Duffy and Quinn, Philadelphia, PA, for Plaintiffs.

Paul F. X. Gallagher, Wilfred T. Mills, Jr., Gallagher, Reilly & Lachat, P.C., Philadelphia, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

This personal injury action is brought by a minor, Danron Gibson ("Danron"), by and through his parent and natural guardian, Danier Gibson ("Danier"), and by Danier in her own right, against the National Railroad Passenger Corporation ("Amtrak" or "Defendant"). Plaintiffs seek damages resulting from an incident in which Danron allegedly suffered electrical burns on property owned by Amtrak.[1] Plaintiffs seek recovery, *inter alia*, under the so-called "attractive nuisance doctrine," whereby landowners may be held liable for damages caused by "Artificial Con-

---

1. This action was initiated in the Court of Common Pleas of Philadelphia County on July 19, 1996, and removed to this Court pursuant to 28 U.S.C. § 1441(a) by notice of removal filed August 5, 1996. Jurisdiction is proper under 28 U.S.C. § 1331 as Amtrak is a federally-chartered corporation more than half the stock of which is owned by the federal government. *See Landman v. Borough of Bristol,* 896 F.Supp. 406, 407–408 (E.D.Pa.1995).

ditions Highly Dangerous to Trespassing Children." Restatement (Second) of Torts, § 339; *see also Thompson v. Reading Co.,* 343 Pa. 585, 23 A.2d 729 (1942)(adopting § 339).[2]

On November 8, 1996, Plaintiffs served Amtrak with 30 Interrogatories, 23 Requests for Production of Documents, and 18 Requests for Admission. Amtrak answered 33 of these discovery requests without objection and objected to the remaining 38, of which it answered 28 to the extent that it did not object. After making reasonable efforts to resolve the disputes, Plaintiffs filed the instant Motion to Strike Defendant's Discovery Responses and to compel complete responses to their Interrogatories, Requests for Production of Documents, and Requests for Admission.

We agree with most of the arguments Amtrak makes in response to Plaintiffs' Motion and, accordingly, sustain its objections. In particular, we note our agreement with Amtrak's objections to Interrogatories 27, 29, and 30 and Document Requests 22 and 23. These requests, as currently worded, seek information beyond the scope of Rule 26(b)(1) and are unduly burdensome. Plaintiffs must confine these requests to the parameters of the attractive nuisance doctrine as defined in § 339. We limit the scope of this Memorandum, however, to an analysis of Amtrak's objection to Plaintiffs' Request for Production of Documents 10. We sustain Amtrak's objection, but we believe further discussion is warranted to avoid subsequent confusion and delay.

In Request for Production of Documents 10, Plaintiffs ask Amtrak to produce for inspection and copying "[a]ll photographs and/or motion pictures of any and all surveil-lance of plaintiff performed by anyone acting on behalf of defendant, defendant's insurer and/or defendant's attorney." (Pls.' Exh. C at 2) Amtrak neither confirms nor denies the existence of any such surveillance. Rather, it objects to this request "pursuant to 26(b)(1), 26(b)(3), the Work–Product Doctrine and *Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D.Pa.1973), and the cases decided subsequent thereto." (Def.'s Exh. C at 2–3) Amtrak argues that, until it decides to use such surveillance at trial, it need not even reveal the existence of any such films or tapes. Further, should it eventually decide to introduce any surveillance evidence at trial, Amtrak contends that it must be permitted to depose Plaintiff "to inquire as to the nature of and extent of the injuries claimed, their effects and current disabilities" before producing the films. (Def.'s Mem. at 20). There is no controlling precedent in this Circuit on these issues, therefore we exercise our discretion by drawing guidance from the numerous federal courts that have addressed similar situations.

Amtrak's second contention is consistent with the approach courts generally take where a defendant in a personal injury action intends to introduce surveillance evidence of the plaintiff at trial. Photos taken and films made in surveillance of the plaintiff are plainly relevant to the litigation. *See, e.g., Wegner v. Cliff Viessman, Inc.,* 153 F.R.D. 154, 159 (N.D.Iowa 1994); *see also Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 517 (5th Cir.1993). Such evidence must also be regarded as work product since it is gathered in anticipation of litigation by a party or the party's representative. *See, e.g., Smith v. Diamond Offshore Drilling, Inc.,* 168 F.R.D. 582 (S.D.Tex.1996); *Ward v. CSX Transpor-*

---

**2.** Restatement (Second) of Torts, § 339 provides as follows:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an un-

reasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to the children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*tation, Inc.,* 161 F.R.D. 38, 40 (E.D.N.C. 1995); *Wegner,* 153 F.R.D. at 156; *Snead,* 59 F.R.D. at 150; *see also* Fed.R.Civ.P. 26(b)(3). Where that party intends to use the films at trial, however, courts generally find that the work product privilege is waived given the plaintiff's (1) substantial need for evidence that may prove critical at trial, and (2) inability to obtain the substantial equivalent of this record of plaintiff's condition at a particular time and place. *See Smith,* 168 F.R.D. at 586–87; *Ward,* 161 F.R.D. at 40–41; *Blount v. Wake Electric Membership Corporation,* 162 F.R.D. 102, 104 (E.D.N.C.1993); *Wegner,* 153 F.R.D. at 159–60; *Snead,* 59 F.R.D. at 151–52. To preserve the impeachment value of such surveillance, courts generally allow the plaintiff's deposition to be taken before any films or photos need be produced. *See, e.g., Smith,* 168 F.R.D. at 587. Indeed, this was the precise action taken by this Court in *Corrigan v. Methodist Hospital,* 158 F.R.D. 54, 58–59 (E.D.Pa.1994).

We also agree with Amtrak that, if it does not intend to introduce any surveillance evidence at trial, it need not produce the putative photos and films during discovery. A decision not to use the evidence at trial presumably indicates that it either corroborates Plaintiffs' claims or is simply inconclusive. In either case, we find that the work product doctrine bars discovery because Plaintiffs have no substantial need of the evidence. *See Fisher v. National R.R. Passenger Corp.,* 152 F.R.D. 145, 150–55 (S.D.Ind.1993); *Snead,* 59 F.R.D. at 151; *but see In re Kaplan,* 110 F.R.D. 161 (S.D.N.Y.1986)(requiring defendant to produce "not only those portions of film or tape which it intends to introduce at trial, but all films or tapes in its possession"); *Delvaux v. Ford Motor Co.,* 518 F.Supp. 1249, 1252 (E.D.Wis.1981). Plaintiffs can clearly obtain evidence tending to prove that Danron's injuries are as they claim without appropriating Amtrak's work product. *Fisher* at 152–53.

■ We disagree, however, with Amtrak's contention that it need not even disclose the existence of surveillance evidence until it decides that it intends to introduce the evidence at trial. First, such reasoning is inconsistent with discovery rules that "were designed to ... make trials 'less a game of blind man's bluff and more a fair contest.'" *Wegner,* 153 F.R.D. at 159 (citing *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958)); *see also Smith,* 168 F.R.D. at 586–87 (requiring disclosure of existence of surveillance evidence prior to taking of plaintiff's deposition). Indeed, Judge VanArtsdalen, a member of the three-judge panel that decided the seminal *Snead* case, quoted this very language in *DiGiacobbe v. National Railroad Passenger Corp.,* 1987 WL 11227, *2 (E.D.Pa. May 21, 1987), *aff'd,* 849 F.2d 600 (3d Cir.1988), in holding that "a plaintiff is entitled to know whether any surveillance photographs or motion pictures have been taken of him or her and the circumstances surrounding the taking of these photographs or films, regardless of whether a defendant intends to introduce such evidence at trial." Further, requiring disclosure of the existence of such tapes clearly serves the important collateral value of encouraging settlements. And, in this case, Plaintiffs' depositions were scheduled to take place on January 30, 1997. Presumably, because this is a personal injury action, Defendants deposed Plaintiffs concerning the nature and extent of Danron's injuries. Having committed Plaintiffs to a description of Danron's physical condition, any impeachment value of the tape has been preserved and there can be no reason not to disclose at least the existence of the tapes.

■ Lastly, Amtrak's objection places no limit on how long it may postpone the decision to introduce surveillance evidence at trial. Clearly, courts must protect plaintiffs from being ambushed on the eve of trial. If Amtrak were to announce at the last minute its intent to introduce surveillance evidence, we would have to decide whether to exclude the evidence or postpone trial to allow discovery concerning the film. A better option, in our view, is to avoid this scenario altogether by requiring defendants to decide whether they intend to introduce any surveillance evidence at trial in sufficient time to allow plaintiffs to be prepared without undue delay. *See, e.g., Carlton v. National Railroad Passenger Corp.,* 1987 WL 7607, *2 (E.D.Pa. Mar.6, 1987)(Pollak, J.) (requiring defendant

to disclose whether it intended to use surveillance films at trial "no later than six weeks before the due date of its pretrial memorandum").

In light of the foregoing, we order that Amtrak disclose whether it intends to introduce at trial any surveillance films or photos no later than March 31, 1997, which is six weeks before the due date of the joint pretrial memo in this case. If so, Amtrak must then promptly produce any such films or photos to Plaintiffs for inspection and copying.

An appropriate Order follows.

## ORDER

AND NOW, this 10th day of February, 1997, upon consideration of Plaintiffs' Motion to Strike Defendant's Discovery Responses, and Defendant's response thereto, it is hereby ORDERED that Plaintiffs' Motion is DENIED.

IT IS FURTHER ORDERED that Defendant shall disclose whether it intends to introduce at trial any surveillance evidence of Plaintiff Danron Gibson no later than March 31, 1997 and, if Defendant so intends, Defendant shall promptly produce to Plaintiffs a copy of said evidence for inspection and copying.