Mark **FLETCHER**, Plaintiff,

v.

**UNION PACIFIC RAILROAD COMPANY, Union Pacific Railroad Company dba. Southern Pacific Transportation Company; Southern Pacific Transportation Company, Defendants.**

No. CIV. 98CV2254E(RBB).

United States District Court,
S.D. California.

May 5, 2000.

Thomas Peters, Fogel, Feldman, Ostrov, Ringler & Klevens, Santa Monica, CA, for plaintiff.

Nancy Carman, City of Industry, CA, for defendant.

## ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION TO COMPEL PRODUCTION OF SURVEILLANCE MATERIALS

BROOKS, United States Magistrate Judge.

On April 24, 2000, this Court heard oral arguments on Plaintiff's Ex Parte Application to Compel Production of Defendant Union Pacific Railroad Company's Surveillance Materials. Thomas Peters of Fogel, Feldman, Ostrov, Ringler & Klevens, appeared on behalf of Plaintiff Mark Fletcher. Nancy Carman appeared on behalf of Defendant Union Pacific Railroad Company.

This is the third hearing on Plaintiff's efforts to obtain attorney work product from this Defendant. After consideration of the parties' pleadings and oral arguments, Plaintiff's request is denied for the reasons outlined below.

## I. BACKGROUND

Plaintiff Mark Fletcher is employed by the Union Pacific Railroad Company. (Compl. at 2.) This case arises out of injuries he sustained on March 3, 1998, when a grab iron he was holding broke, causing him to fall from a moving train. (*See id.* at 3; *see also* Opp. at 1.)

Fletcher filed suit under the Federal Employer's Liability Act ("FELA"), alleging that he is permanently injured and disabled. (Compl. at 3–4.) He seeks $5,000,000.00 in general damages, as well as undisclosed damages for lost wages and future medical expenses. (*Id.*)

Union Pacific covertly videotaped Fletcher on several occasions between May, 1998, and June, 1999. (*See* Opp. at 1.) Specifically, Defendant videotaped Fletcher on seven separate dates: May 1–3, 1998, May 28, 1998, March 19–20, 1999, and June 14, 1999. (*See id.* at 7.)

On November 12, 1999, twenty months after the accident, Defendant had Fletcher ex-

amined by its medical expert, Douglas Kiester, M.D. (*See* Mot. to Compel, Ex. A at 1, Kiester Medical Report.) Dr. Kiester found no objective signs of serious or permanent injury. (*Id.* at 11.) Further, Dr. Kiester's report refutes Plaintiff's claims that he limps and often needs to use a cane, noting that Fletcher's limp disappeared as he left the examination room. (*Id.* at 10.) Dr. Kiester reaffirmed the opinions expressed in his report during his deposition taken on March 9, 2000. (*See* Mot. to Compel, Ex. B at 66–70, Kiester Dep.)

On February 19, 1999, Plaintiff served interrogatories on Union Pacific, seeking the date and location of any surveillance Defendant had conducted. (*See* Mot. to Compel Answers to Interrogs., filed Sept. 23, 1999, at 3.)

Shortly thereafter, on March 9, 1999, Fletcher served requests for production on the Defendant. (*See* Mot. to Compel Produc. of Materials, filed Sept. 23, 1999, at 3.) Request number 16 sought:

> [w]ritings involving any surveillance conducted of Plaintiff, including but not limited to, reports, memos, notes and film or videotape and still photographs . . . .

(*Id.*)

Union Pacific objected to these requests on the basis of attorney-client privilege and the work product doctrine. Defendant also argued that it was not required to disclose whether it had conducted surveillance of Fletcher until he had been deposed and Defendant had determined whether it would introduce the surveillance material at trial. (*Id.* at 3–4.)

Fletcher filed multiple motions to compel on September 23, 1999 [Doc. Nos. 14, 16]. Union Pacific opposed these motions [Doc. Nos. 31–32], arguing that any surveillance material it may have was protected from discovery under the work product doctrine. Without conceding that it had conducted surveillance of Plaintiff, Defendant stipulated not to introduce at trial any surveillance material it had taken.

This Court held that although surveillance material is protected work product, whether Defendant conducted surveillance and the dates on which any surveillance took place were not privileged. (Tr. of Nov. 29, 1999, Hearing at 5–7, 30–32, 55.) Accordingly, the Court ordered Defendant to answer Fletcher's interrogatories regarding the date and location of its surveillance. (*Id.* at 6, 55.) Plaintiff's motion to compel production of any actual films was denied without prejudice. (*Id.*) The Court explained:

> I will deny [Plaintiff's motion to compel production of the surveillance films] without prejudice because I don't feel the Plaintiff has made a showing of substantial need and that he is unable to obtain a substantial equivalent without undue hardship.
>
> . . . .
>
> [U]ntil the railroad identifies the date of the surveillance, the location, and the other things called for by interrogatories 15 through 19, Plaintiff is hampered in making this showing. So, for that reason, it would be premature to deny the motion in its entirety today.
>
> So today I'm denying [the] . . . request to compel the production of the [surveillance films] without prejudice to a future showing after the railroad answers interrogatories 15 through 19.

(*Id.* at 6–7.)

After Union Pacific answered that it had conducted surveillance, Fletcher again sought to compel production of the surveillance films [Doc. No. 56]. The Court denied this motion without prejudice, holding that Fletcher had not demonstrated "substantial need" for the material. Plaintiff had not attempted to obtain the substantial equivalent of the information contained in the videotapes from other sources such as his family or neighbors. (Tr. of Mar. 1, 2000, Hearing at 20.) The Court held:

> [A] declaration by Mr. Fletcher that "I do not remember what I was doing on March 19 and June 14, 1999" by itself is

not sufficient to show substantial need for work product. Union Pacific has pointed out other possible sources of neutral information concerning Mr. Fletcher's condition. It would include neighbors, people at the grocery store, people at the auto mechanic store.

Absent a showing that Mr. Fletcher is unable to obtain any seemingly neutral evidence on his condition, I think it would be premature to order the work product to be produced.

... Plaintiff's motion to compel production of surveillance tapes is going to be denied without prejudice. And if Plaintiff can cure the deficiencies that I've outlined, I'm willing to revisit this matter at a later date.

(*Id.* at 20–21.)

Fletcher now brings his third motion to compel, maintaining that he has demonstrated "substantial need" for the films and cannot obtain their substantial equivalent without undue hardship.

## II. THE PARTIES' CONTENTIONS

### A. *Plaintiff's Argument*

Fletcher concedes the surveillance films are entitled to qualified work product immunity but argues that the films should be produced because he has demonstrated substantial need for them. (Mot. to Compel at 3–6.)

Plaintiff maintains that he needs Defendant's films to rebut Dr. Kiester's opinions and corroborate his treating physician's conclusions. (*Id.* at 9–10.) He cites portions of Kiester's examination report which describe his injuries as "minimal" and state that there is no objective evidence to support Fletcher's claims that he is seriously injured, limps, and uses a cane. (*Id.* at 6–9.) Without having seen the films, Plaintiff asserts they "will almost certainly bolster" his claims and discredit Kiester's testimony. (*Id.* at 10.)

Fletcher complains that he cannot obtain the substantial equivalent of Defendant's surveillance films because of their "utter uniqueness." (*Id.* at 10.) He contends:

> [N]othing plaintiff can obtain on his own will ever approach the probative value and evidentiary power of films taken secretly of the plaintiff by plaintiff's opponent in this very litigation.
>
> . . . .
>
> ... [T]here simply is—and never will be—any substantial equivalent which plaintiff can ever obtain.

(*Id.* at 12–13.)

Plaintiff argues that attempting to obtain equivalent evidence from neighbors and other individuals who may have observed him since his accident would be futile. (*Id.* at 11–13.) He maintains that even if he were to undertake the "herculean" task of locating individual "needle in a haystack" witnesses, no "juror in their right mind would ever" give their testimony the same weight as Defendant's surveillance films. (*Id.* at 12, 14.) Moreover, Fletcher argues that the only witnesses whose testimony might be the substantial equivalent of the surveillance films would be individuals who either don't know or don't like Plaintiff, and these individuals would not be willing to testify. (*Id.* at 13–15.)

### B. *Union Pacific's Opposition*

Defendant argues that Fletcher has not demonstrated substantial need to invade attorney work product, especially since it has "stipulated not to use the requested information at trial for any purpose ...." (Opp. at 2.) It contends that *Fisher v. National Railroad Passenger Corp.*, 152 F.R.D. 145 (S.D.Ind.1993), and other cases addressing the discoverability of "nonevidentiary" surveillance material require Fletcher to obtain information on his physical condition from alternate sources such as his own medical expert, his memory, or testimony from his neighbors. (Opp. at 5.)

Defendant maintains that Fletcher's conclusory statement that it would "probably

[be] impossible" to locate witnesses who could testify to the severity of his injuries is insufficient to establish substantial need. (*Id.* at 6–7.) It notes that Fletcher's witness list includes ten friends, family members, and acquaintances who it presumes will testify that Fletcher's injuries are as serious as he claims. (*Id.*)

Finally, Union Pacific contends that requiring it to produce the surveillance films would place it in the "precarious" position of helping Fletcher prove his case. (*Id.* at 9.) It argues that granting Plaintiff's Motion would set a dangerous precedent that would chill defendants' willingness to investigate potentially unfavorable aspects of their cases. (*Id.* at 10.)

## III.  DISCUSSION

### A.  *The Work Product Doctrine*

The work product doctrine, outlined in rule 26(b)(3) of the Federal Rules of Civil Procedure, provides that a party may not discover documents prepared in anticipation of litigation by an opposing party's counsel unless: 1) The party has "substantial need" for the documents, and 2) the party cannot obtain the substantial equivalent of the documents without undue hardship. Fed.R.Civ.P. 26(b)(3).

The federal rules encourage broad and open discovery to ensure that a trial is "less a game of blind man's b[l]uff and more a fair contest ...." *See United States v. Procter and Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The work product doctrine attempts to strike a balance between the policy of open discovery and an attorney's need to analyze and prepare a client's case without interference or free-riding by an opposing party. *See Hickman v. Taylor*, 329 U.S. 495, 516, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (Jackson, J. concurring) (noting that discovery was not intended to allow an attorney to argue a case with "wits borrowed from the adversary"); *see also United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir.1995) (holding that rule 26(b)(3) creates a "zone of privacy" for an attorney's work product).

### B.  *Surveillance Films Constitute Work Product And Are Entitled To Qualified Immunity From Discovery.*

Numerous courts have held that surveillance films constitute work product and are subject to qualified immunity. *See, e.g., Forbes v. Hawaiian Tug and Barge Corp.*, 125 F.R.D. 505, 507–08 (D.Haw.1989); *Ford v. CSX Transportation, Inc.*, 162 F.R.D. 108, 111 (E.D.N.C.1995); *Fisher,* 152 F.R.D. at 150–51 (holding that surveillance films are work product entitled to qualified immunity from discovery). A party may only discover an opponent's surveillance films or other trial preparation materials upon a showing that he or she has substantial need for the items and cannot obtain their substantial equivalent without undue hardship. *See* Fed.R.Civ.P. 26(b)(3).

Whether films will be used at trial is a significant factor in determining whether the party seeking to discover them has a "substantial need" for the material. *See Fisher,* 152 F.R.D. at 158 ("[I]t is difficult to conceive of any circumstances which might prove so compelling as to justify disclosure of non-evidentiary videotapes and the concomitant intrusion into attorney work product.").

### C.  *Judicial Application Of The Rule 26(b)(3) "Substantial Need" Test To Surveillance Films.*

Courts have not taken a uniform approach in applying the "substantial need" test. Some courts view rule 26(b)(3) as creating a two-prong test, *see, e.g., Fisher* 152 F.R.D. at 153 n. 10. Others apply a three-factor balancing test. *See* 8 Charles A. Wright & Richard L. Marcus, *Federal Practice and Procedure* § 2025, at 374 (2d ed.1994) (describing the test as involving "three foci").

Courts following the two-prong approach require a party seeking discovery of an opponent's trial preparation material to demonstrate "substantial need" and "undue

hardship." "The burden is squarely on [the requesting party] to meet both prongs of this test." *Hendrick v. Avis Rent A Car Sys.*, 916 F.Supp. 256, 260 (W.D.N.Y.1996).

■ The substantial need prong examines: 1) whether the information is an essential element in the requesting party's case and 2) whether the party requesting discovery can obtain the facts from an alternate source. *See* 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.70[5][c], at 26–221 to 26–222 (3d ed.1999).

■ Professor Moore provides some guidance for determining the "substantial need" required to overcome work product immunity.

Substantial need ... is demonstrated by establishing that the facts contained in the requested documents are essential elements of the requesting party's prima facie case. Common examples of *essential materials* include test results that cannot be duplicated, and photographs taken immediately after an accident when the accident scene has since changed. Another example of materials for which a "substantial need" often exists are contemporaneous statements taken from, or made by, parties or witnesses ....

On the other hand, a party's desire to find *corroborating evidence is insufficient to establish substantial need.*

*Id.* (footnotes omitted) (emphasis added).

The extent to which a party needs information contained in an opponent's work product depends, in large part, on whether the work product is unique. *See In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir.1982) (holding that a court should determine whether facts contained in work product could be discovered by alternate means).

■ The undue hardship prong examines the burden obtaining the information from an alternate source would impose on the party requesting discovery. *See* 6 *Moore's Federal Practice* § 26.70[5][d], at 26–223. At least one court has noted the considerable overlap between substantial need and undue hardship. *See Fisher*, 152 F.R.D. at 153 n. 10. Examples of undue hardship include instances when witnesses cannot recall statements contained in interviews. *See In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d at 1240 (stating that faulty memory of witness must be substantiated); *Xerox v. I.B.M. Corp.*, 64 F.R.D. 367, 382 (S.D.N.Y.1974) (requiring plaintiff to depose witnesses to establish they could not recall information). Unusual expense involved in obtaining equivalent information is another factor that may establish undue hardship. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir.1984).

Courts following the three-factor approach consider: 1) whether there is "substantial need" for the work product—something more than relevancy under rule 26(b)(1); 2) whether substantially equivalent information can be obtained from another source; and 3) whether doing so would create an undue hardship (not merely expense or inconvenience) for the party seeking discovery. *See* 8 *Federal Practice and Procedure*, § 2025, at 374 & n. 15.

### D. *Nonevidentiary Surveillance Films Have Not Been Ordered Produced.*

Defendant stipulated that it will not use the surveillance films at trial. (Opp. at 2.) Although several courts discuss surveillance, few courts have considered the discoverability of "nonevidentiary" films.

In *Gibson v. National Railroad Passenger Corp.*, 170 F.R.D. 408, 410 (E.D.Pa.1997), the court "agree[d] with Amtrak that, if it does not intend to introduce any surveillance evidence at trial, it need not produce the putative photos and films during discovery." The *Gibson* court cites *Fisher v. National Railroad Passenger Corp.*, 152 F.R.D. 145, with approval. *Fisher* contains a detailed discussion of the specific issue raised here: the proper application of the work product doctrine to nonevidentiary surveillance films.

In *Fisher*, a railroad employee suing his employer under FELA, sought discovery of

the railroad's surveillance films to uncover evidence that would bolster his claims of injury. *Id.* at 152. When the railroad objected on the grounds of work product immunity, the plaintiff argued that he had a substantial need for the films. *Id.* at 151. The defendant did not dispute that the plaintiff could not obtain the substantial equivalent of the surveillance films. *Id.* Consequently, the court only considered whether the plaintiff had established a substantial need for the tapes "in the preparation of his case." *Id.*

The *Fisher* court held that the plaintiff had not carried his burden of showing a substantial need for the defendant's work product; Fisher had an "available source of information regarding his injuries, his own knowledge and testimony . . . ." *Id.* at 151 n. 9, 152. Because the plaintiff could obtain the information he sought without invading opposing counsel's work product, the court denied plaintiff's motion to compel production of the surveillance tapes. *Id.* at 153, 158.

*Fisher* addressed the comparative quality of plaintiff's testimony and the defendant's surveillance films. *Id.* at 153. Although discovery of work product may be appropriate in cases where the information contained on the surveillance films is unique or superior to the plaintiff's knowledge or testimony, the court noted that it was difficult to justify disclosure of nonevidentiary videotapes. *Id.* at 153, 158. One exception might be where the party only intended to introduce some surveillance films into evidence and shield others from discovery. *See Daniels v. National Railroad Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y.1986) (requiring railroad to produce all surveillance films it possessed, not just those it intended to introduce into evidence). In Fletcher's case, Defendant will not seek to introduce any of the surveillance material into evidence.

**E.  *Should Defendant's Work Product Be Produced?***

In determining whether Fletcher has demonstrated a substantial need for Defendant's work product, the Court will ask three ques-

tions: 1) Are the facts depicted in the films essential to proving Fletcher's prima facie case; 2) can Fletcher obtain substantially equivalent information from an alternate source; and 3) would doing so create an undue burden?

The first question concerns the films' importance to Fletcher's case. If the films do not contain information essential to Fletcher's prima facie case, he does not have a substantial need for them, and the Court's inquiry need proceed no further. *See* 6 *Moore's Federal Practice* § 26.70[5][c], at 26–221.

The next issue, which is closely related, is whether Fletcher can obtain substantially equivalent information from an alternate source. If not, Fletcher has demonstrated substantial need for the films. *See id.* § 26.70[5][c], at 26–221 to 26–222 (noting that parties have a substantial need for unique information such as test results that cannot be duplicated and contemporaneous witness statements). When alternate sources exist, the Court must consider the final question.

The third question examines whether obtaining the information from an alternate source would be unduly burdensome. If Fletcher can obtain equivalent information on his physical condition without undergoing an unreasonable burden, he does not have substantial need for the surveillance films. *See* 8 *Federal Practice and Procedure* § 2025, at 375–89 (noting that undue hardship may be met when a witness is unavailable or where obtaining information from an alternate source would impose an unreasonable financial burden.) Fletcher bears the burden of proof on each question. *See* Fed. R.Civ.P. 26(b)(3).

1.  *The Surveillance Films Are Not Essential To Fletcher's Prima Facie Case.*

Fletcher carries the burden of showing that his opponent's work product should be disclosed to him. *See Director, Office of Thrift Supervision v. Vinson and Elkins,*

*LLP,* 124 F.3d 1304, 1307 (D.C.Cir.1997) (applying burden of proof to party seeking discovery of work product.) A request for pretrial discovery of work product an opposing party intends to use at trial raises issues different from a request for nonevidentiary trial preparation materials.

Here, Plaintiff is suing Union Pacific under FELA, claiming that he was injured as a direct result of Defendant's unsafe grab iron. To prevail, Fletcher must prove he has suffered damages. This places Plaintiff's physical condition at the center of dispute in this case.

Fletcher mistakenly contends that most federal courts find surveillance films discoverable regardless of whether they will be used at trial. This is not so. Plaintiff's case authority expressly or implicitly assumes that the surveilling party intends to use the surveillance at trial. *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 516–17 (5th Cir.1993) (discussing impeachment evidence); *Smith v. Diamond Offshore Drilling, Inc.,* 168 F.R.D. 582, 586 (S.D.Tex.1996) (seeming to assume surveillance is for use at trial); *Boyle v. CSX Transp., Inc.,* 142 F.R.D. 435, 437 (S.D.W.Va.1992) (seeming to assume surveillance is for use at trial); *Forbes,* 125 F.R.D. at 507 (discussing impeachment evidence); *Daniels,* 110 F.R.D. at 161 (requiring production of surveillance to be used at trial and other surveillance); *Martin v. Long Island R.R. Co.,* 63 F.R.D. 53, 54–55 (E.D.N.Y.1974) (assuming photographs and movies are to be used at trial). The arguments for requiring an opponent to disclose attorney work product are compelling when the party intends to use surveillance films at trial.

Defendant's surveillance tapes contain information on Fletcher's physical condition. Union Pacific will not introduce the tapes at trial. (Opp. 2.) Defendant has conceded that the films depict Fletcher performing day-to-day activities such as walking and getting into a car. (*See* Tr. of Mar. 1, 2000, Hearing at 8.) The films may show that Plaintiff engaged in these activities with some degree of

difficulty, corroborating his claim that he was injured. The surveillance occurred on various dates two months after the accident and again approximately one year later.

The films are not the only available evidence that Plaintiff is injured. Fletcher's medical records, his testimony, testimony of coworkers and his spouse, and the testimony and reports of his treating physician and retained experts will be offered to show that he was injured in the March, 1998, accident. Under these circumstances, the surveillance films would be offered to corroborate Plaintiff's claims.

"Corroborating evidence" is defined as "[e]vidence supplementary to that already given and tending to strengthen or confirm it." *Black's Law Dictionary* 344 (6th ed.1990).

> "Corroborative evidence" is generally defined as additional evidence of a different character tending to prove the same point or fact. In other words, it is evidence tending to confirm and to strengthen or to show the truth or probability of truth of a witness' testimony.

*Hasselstrom v. McKusick,* 51 C.C.P.A. 1008, 324 F.2d 1013, 1018 n. 7 (1963).

Plaintiff places too much emphasis on the fact that some post-accident activity was fixed on film. He relies on *Martin,* 63 F.R.D. at 55, for the proposition that "[s]ince plaintiff's past activities obviously can no longer be filmed, the barrier of the work-product rule is lifted." This conclusion is correct if the activity filmed is critical to Fletcher's claim. Here, it is not. *See Republic Gear Co. v. Borg–Warner Corp.,* 381 F.2d 551, 558 (2d Cir.1967) (holding that production not warranted where documents were not "essential to the preparation of [the requesting party's] case on the *critical* issue . . . .") (emphasis added).

Plaintiff argues:

[I]t would be manifestly unfair to plaintiff were he not permitted to access surveillance materials which *support his claims*

674

*and bolster the conclusions* of Dr. Calvin [the treating physician]. Such films, taken without plaintiff's knowledge, constitute objective evidence which is, almost certainly, entirely *consistent with plaintiff's claims as well as those of his treating physician.* As such, the films will almost certainly *bolster the credibility* of both men in the face of defendant's accusations that both are liars.

(Motion at 9–10 (emphasis added).) Fletcher seeks the Defendant's trial preparation materials to corroborate his evidence. However, corroborative evidence is rarely "necessary." *Vinson & Elkins,* 124 F.3d at 1308. "It is often thought cumulative ...." *Id.* Plaintiff has not carried his burden of establishing a substantial need for his opponent's attorney work product.

2. *Fletcher Has Not Demonstrated That He Cannot Obtain The Information Contained In The Surveillance Films From An Alternate Source.*

■ Plaintiff bears the burden of proving that he cannot obtain the substantial equivalent of Defendant's surveillance films. *Doubleday v. Ruh,* 149 F.R.D. 601, 607 (E.D.Cal. 1993); *see also Sedlacek v. Morgan Whitney Trading Group, Inc.,* 795 F.Supp. 329, 332 (C.D.Cal.1992). Conclusory allegations do not establish that no substantially equivalent source of information exists. *See Fisher,* 152 F.R.D. at 152 (*quoting United States v. O.K. Tire and Rubber Co.,* 71 F.R.D. 465, 467 n. 6 (D.Idaho 1976)) ("The necessity for production is reduced where an available alternative for obtaining the desired information has not been explored ...."); *Goldner v. Chicago and N.W.Ry. System,* 13 F.R.D. 326, 329 (D.Ill.1952) (refusing to allow discovery of work product when the requesting party had not made a bona fide effort to obtain the information by independent investigation).

Fletcher contends that medical records and testimony regarding his physical condition are inferior to Defendant's films because a trier of fact would find the surveillance films more believable. Plaintiff maintains that the films are unique because they lack

the taint of bias associated with alternate sources of information. The same argument can be made for most of an opposing counsel's work product. However, more is required before work product is turned over to the other side.

Fletcher's emphasis on the weight of his evidence and the surveillance material misconstrues rule 26(b)(3). Substantial equivalence focuses on the *quality* of the information a party can obtain from alternate sources. *See Southern Railway Co. v. Lanham,* 403 F.2d 119, 127 (5th Cir.1968) (noting that "the real question is whether the movant can obtain the [underlying] facts without production of the documents" subject to work product protection); *see also Vinson & Elkins,* 124 F.3d at 1308 (concluding that corroborative evidence has a substantial equivalent and that "by definition, a party seeking corroborative evidence has already found a way to get the same information.") A requesting party has been required to depose witnesses to show that they could not recall information, thus providing substantially equivalent information, before attorney work product would be produced. *See, e.g., Xerox v. I.B.M.,* 64 F.R.D. at 382.

Case law recognizes that some items are so unique that they lack a substantial equivalent. For example, a videotape of the incident giving rise to a suit or a witness statement taken shortly after the incident often lack any substantial equivalent. *See* 6 *Moore's Federal Practice* § 26.70[5][c], at 26–221 to 26–222. In *Rexford v. Olczak,* 176 F.R.D. 90, 93 (W.D.N.Y.1997), the court ordered a plaintiff to produce work product to the defendants which consisted of a journal with a contemporaneous account of events she witnessed or participated in that were "central" to her claim that she was wrongfully denied a teaching position because of her political support of certain school board candidates.

The surveillance films in this case do not provide unique information. The films do not contain footage of the accident itself. They depict Fletcher engaging in day-to-day

activities two to fifteen months after the accident. (*See* Tr. of Mar. 1, 2000, Hearing at 8.) The films depict Fletcher's physical condition on seven days; Plaintiff is familiar with his physical condition from the day he was injured to the present.

Fletcher has access to substantially equivalent evidence. "Plaintiffs can clearly obtain evidence tending to prove that [plaintiff's] injuries are as they claim without appropriating [defendant] Amtrak's work product." *Gibson,* 170 F.R.D. at 410.

Fletcher does not claim he is unable to testify about his physical condition since the accident. Further, Plaintiff does not contend that his wife and other individuals with whom he interacts on a regular basis are unable to provide testimony about his injuries. Finally, Plaintiff has not alleged that his treating physician and expert witnesses, armed with his medical records, are unable to testify to the nature and extent of his injuries. On the contrary, Fletcher seeks Defendant's films to bolster the testimony he and his treating physician will offer. (Mot. to Compel at 9–10.)

There are alternative sources for information and evidence of Plaintiff's physical condition. He does not need his opponent's trial preparation materials to present his case.

3. *Fletcher Has Not Shown That Obtaining Substantially Equivalent Information From Other Sources Would Create An Undue Burden.*

■ Assuming that Fletcher has a substantial need for Defendant's trial preparation materials, he may only discover the films by showing that obtaining equivalent information from another source would create an undue burden. Plaintiff has not attempted to find substantially equivalent information.

At the hearing on Fletcher's second motion to compel production of the surveillance films, the Court held that Plaintiff failed to demonstrate undue burden because he had made no attempt to obtain equivalent information from alternate sources. (Tr. of Mar. 1, 2000, Hearing at 20.) Rather than cure this deficiency, Fletcher simply maintains that "scour[ing]" his neighborhood for potential witnesses would be futile. (Mot. to Compel at 11–12.)

A conclusory allegation that locating witnesses would be a "herculean" task does not establish undue burden. *See Stamatakos v. Hunter Shipping Co.,* 49 F.R.D. 23, 25 (E.D.Pa.1969) ("[T]he mere conclusory allegation that the witnesses are unavailable is in our opinion insufficient . . . ."). Fletcher must make some attempt to locate percipient witnesses before invading Union Pacific's work product. *See Xerox v. I.B.M.,* 64 F.R.D. at 382 (plaintiff required to depose witnesses to show that they could not recall information sought prior to invading opponent's work product); *see also* 6 *Moore's Federal Practice* § 26.70[5][d], at 26–223 (noting that the party seeking discovery must set forth "specific facts" to demonstrate undue burden).

Plaintiff has made no attempt to obtain the substantial equivalent of the trial preparation materials he seeks. Work product cannot be turned over so easily.

### IV. CONCLUSION

Plaintiff is not entitled to the best corroborative evidence he can discover, especially when that evidence is opposing counsel's trial preparation materials. There is no substantial need for work product that will corroborate the Plaintiff's other evidence of injury.

Fletcher has not attempted to obtain substantially equivalent evidence from alternate sources. He has not demonstrated any undue hardship, and he may not invade Defendant's work product. Rule 26(b)(3) does not require a party to undertake futile or "herculean" searches for alternate sources of information. However, it does require that the party seeking discovery exert a modicum of effort. To convince a court that one has substantial need to invade an opponent's work product, undue burden must be more than alleged. It must be demonstrated.

Plaintiff's Ex Parte Application is denied.