**Joe O. SMITH**

**v.**

**DIAMOND OFFSHORE DRILLING, INC., et al.**

**Civil Action No. G–95–678.**

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 27, 1996.

---

**13.** *Id.* at 269 (emphasis added) (citations omitted).

Ernest H. Cannon, Ernest Cannon & Associates, Houston, TX, for Plaintiff.

Steven L. Roberts, Fulbright & Jaworski, Houston, TX, for Defendants.

### *ORDER*

KENT, District Judge.

· The Plaintiff brought this action after he was injured when the cab of the crane he was operating became disengaged from its pedestal mounts. Now pending before the Court is the Plaintiff's Motion to Compel the Defendant to respond to certain Interrogatories and Requests for Production. For the reasons set forth below, the Motion is hereby **GRANTED IN PART** and **DENIED IN PART.**[1]

The discovery requests involved in this dispute seek information about statements taken from witnesses, investigative reports compiled by or on behalf of the Defendant, and surveillance evidence of the Plaintiff taken by the Defendant. The "work product doctrine" lies at the heart of the Defendant's objections to the Plaintiff's requests.[2]

### I.

The work product doctrine, first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), works to protect the mental processes of an attorney from inquiry by an opposing party. Such protection is necessary to ensure that a client receives the highest quality representation from his attorney. Were an attorney's work product

> open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advise and the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman,* 329 U.S. at 511, 67 S.Ct. at 393.

The work product doctrine is now embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Under Rule 26, if documents and other tangible things otherwise discoverable were prepared in anticipation of litigation by or for the other party or by or for the other party's representative, a

---

1. At the hearing previously held on the Plaintiff's Motion to Compel, the Court ruled from the bench on the issues raised in Motion. This Order simply memorializes the rulings previously issued by the Court.

2. As to the other points raised in the Plaintiff's Motion to Compel, the Defendant stated at the hearing that it had fully complied with the Plaintiff's discovery requests, producing all requested information and documents in existence. The Court accepted the Defendant's assertions, and, consequently, the remaining portions of the Motion to Compel are **MOOT.**

party may obtain discovery of the materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R.Civ.P. 26(b)(3). However, when ordering the discovery of materials prepared in anticipation of litigation, the court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* Thus, the doctrine does not render an attorney's work product privileged and thus outside the scope of discovery, but instead creates a type of qualified immunity from discovery for materials prepared in anticipation of litigation. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n. 2 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1536, 128 L.Ed.2d 189 (1994).

## II. Statements from Witnesses and Investigative Reports

The Defendant tendered to the Court for *in camera* inspection all documents in its possession not previously provided to the Plaintiff that are responsive to the Plaintiff's requests for statements from witnesses and investigative or accident reports. After examination of the documents, the Court concludes that the witnesses' statements must be produced to the Plaintiff, but that the investigative reports are protected.

### A. Statements from Witnesses

■■■ The statements at issue in this case are transcripts of recorded interviews of certain employees of the Defendant who witnessed the Plaintiff's accident. The interviews were conducted by an investigator for the Defendant three days after the accident. Clearly, the statements were taken in anticipation of litigation and thus fall within the scope of the work product doctrine.[3] However, material prepared in anticipation of litigation is nonetheless discoverable if the requesting party establishes that it has a substantial need for information and that it cannot obtain substantially equivalent information from other sources without undue hardship. Fed.R.Civ.P. 26(b)(3).

In *Southern Railway Co. v. Lanham,* 403 F.2d 119 (5th Cir.1968), the plaintiffs' decedents were killed when the car in which they were riding collided with a train operated by the defendant. The plaintiffs sought production of statements obtained from the train's crew a few days after the accident. 403 F.2d at 123. The court concluded that "statements taken shortly after the accident constitute 'unique catalysts in the search for truth,' in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory." *Id.* at 128 (citation omitted). Given the lapse of time since the accident, the plaintiffs could not obtain similarly accurate descriptions of the accident by interviewing the crew members themselves. Therefore, because of the importance of the statements and the plaintiffs' inability to obtain the information by other means, the court ordered the defendant to produce the statements. *Id.* at 130–31.

While the court in *Lanham* was considering the "good cause" requirement then included in Fed.R.Civ.P. 34 rather than the substantial need and undue hardship requirements now included Rule 26, the Court believes the *Lanham* analysis is nonetheless applicable in this case. As in *Lanham,* the statements sought by the Plaintiff in this case were taken just a few days after the accident, and, consequently, will be more accurate than any statements that could now be obtained from the same witnesses. Be-

---

**3.** The Court notes that the Plaintiff's discovery requests generally sought information received or generated before the commencement of this lawsuit. The fact that a document may have been created before a complaint was actually filed does not exempt it from the scope of the work product doctrine. Instead, the doctrine protects materials gathered "in anticipation of litigation." Fed.R.Civ.P. 26(b)(3). The fact that a lawsuit has not yet been filed is irrelevant— "litigation need not necessarily be imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).

cause the Plaintiff has a substantial need for the statements and cannot obtain their substantial equivalent by any means other than through the Defendant, the Court concludes that the Defendant must produce the statements.

### B. Investigative Reports

■ The reports that the Defendant contend are protected work product are memoranda prepared by the Defendant's investigator. One report is dated two days after the accident, and the other is dated approximately two weeks after the accident. Again, it is clear that the reports were prepared in anticipation of litigation; thus, the question is whether the Plaintiff has established its entitlement to the reports under Rule 26(b)(3).

The investigative reports contain analysis of the Plaintiff's accident, including the investigator's on-scene attempt to verify the boom angle of the crane and the crane's load handling capacity as reported by the Plaintiff at the time the accident occurred. In addition, the reports contain the investigator's summaries of his interviews with various witnesses. Thus, because they are suffused with the investigator's mental impressions and conclusions, the investigative reports are "opinion work product" rather than ordinary work product materials.

Some courts treat opinion work product as absolutely protected and never subject to discovery. *See, e.g., Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730, 734 (4th Cir.1974) ("no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories."), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); *Hisaw v. Unisys Corp.,* 134 F.R.D. 151, 152 (W.D.La.1991) (opinion work product is never discoverable); *Bulk Lift Int'l, Inc. v. Flexcon & Sys., Inc.,* 122 F.R.D. 482, 491 (W.D.La.1988) (opinion work product absolutely protected). Other courts, however, treat opinion work product as entitled to nearly absolute protection. *See, e.g., Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992) ("opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling."); *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977) ("Unlike ordinary work product, opinion work product can not be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the material by alternative means without undue hardship. In our view, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.") (citation omitted). It is not entirely clear which approach would be adopted by the Fifth Circuit. *Compare Kent Corp. v. NLRB,* 530 F.2d 612, 624 (5th Cir.) (if prepared in anticipation of litigation, reports consisting of mental impressions, conclusions, opinions, and legal theories "are always protected by a properly-raised claim of work product privilege, regardless of the opposing litigant's need."), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976) *with In re International Sys. & Controls Corp. Sec. Litigation,* 693 F.2d 1235, 1240 (5th Cir.1982) (while not deciding the issue, noting that "[s]ome courts have provided an almost absolute protection" for opinion work product materials) *and Lanham,* 403 F.2d at 131–32 ("the discovery of those portions of the documents reflecting the mental processes and impressions of claim agents or investigators should be conditioned upon a strong showing of 'necessity or justification,' [and] 'hardship or injustice.' ").

Nonetheless, assuming that opinion work product is discoverable under some circumstances, the Plaintiff here has not made a showing of compelling or extraordinary need that would justify disclosure of the investigative reports. *Cf. Hickman,* 329 U.S. at 513, 67 S.Ct. at 395 ("If there should be a rare situation justifying production of these matters, petitioner's case is not of that type."). Accordingly, the Court concludes that the investigative reports are protected *opinion* work product, and need not be produced to the Plaintiff.

### III. Surveillance Evidence

■ The biggest point of contention between the parties in this case is the extent to which Defendant may be required to disclose

the existence of and produce any surveillance films, videotapes, or photographs taken of the Plaintiff.

In a personal injury case, surveillance of the plaintiff can be a very important aspect of the defendant's case, if the surveillance tends to discredit the plaintiff's description of the extent and effects of his injuries. Obviously, surveillance evidence is gathered in anticipation of litigation and thus is generally protected as work product. *See, e.g., Wegner v. Cliff Viessman, Inc.,* 153 F.R.D. 154, 156 (N.D.Iowa 1994); *Snead v. American Export–Isbrandtsen Lines,* 59 F.R.D. 148, 150 (E.D.Penn.1973). However, given the impact of surveillance evidence and its importance at trial, personal injury plaintiffs in general have a substantial need for any surveillance evidence when preparing their cases for trial. Moreover, the surveillance evidence, available only from the one who obtained it, "fixes information available at a particular time and place under particular circumstances, and therefore cannot be duplicated." *Wegner,* 153 F.R.D. at 159. Accordingly, because the substantial need/undue hardship requirements of Rule 26 for the discovery of work product materials is satisfied, the Court concludes that surveillance evidence is discoverable, its work product status notwithstanding. *Id.; see also Ward v. CSX Transportation, Inc.,* 161 F.R.D. 38, 40–41 (E.D.N.C.1995) (while surveillance films are work product materials, they are discoverable under the Rule 26 substantial need/undue hardship standard); *accord Smith v. CSX Transportation, Inc.,* 1994 WL 762208 (E.D.N.C.1994).

Nonetheless, recognizing that the impeachment value of surveillance evidence may well be lessened or lost by disclosure to the plaintiff, many courts have held that surveillance evidence must be disclosed only *after* the plaintiff's deposition has been taken. *See, e.g., Ward,* 161 F.R.D. at 40–41; *Smith,* 1994 WL 762208 at *2; *Martin v. Long Island RR. Co.,* 63 F.R.D. 53, 55 (E.D.N.Y. 1974); *Snead,* 59 F.R.D. at 151. This procedure preserves the impeachment value of the surveillance by requiring the plaintiff to commit by deposition to a description of the scope of his injuries, but allows the plaintiff

sufficient time before trial to evaluate the surveillance evidence to determine its authenticity and accuracy.

While the Court realizes that surveillance films may often provide compelling and persuasive impeachment of a plaintiff's evidence, surveillance evidence also provides substantive evidence of the extent of the plaintiff's injuries, often corroborating rather than impeaching the plaintiff's testimony. *See Chiasson,* 988 F.2d at 517 (surveillance tape is, at least in part, substantive evidence tending to prove the extent of the plaintiff's injuries). Because surveillance evidence is substantive evidence, a plaintiff clearly has a right to its discovery under Rule 26. To delay the discovery of such evidence ignores the substantive aspect of surveillance evidence, and seems to be premised on an assumption that only those plaintiffs who have fabricated or exaggerated their injuries will be interesting in learning whether surveillance evidence exists. Clearly, a plaintiff who has fabricated or exaggerated his injuries cannot claim to be surprised by a videotape showing the true nature of his injuries. However, a truthful plaintiff may well be surprised by the content of a surveillance tape, given the photographer's ability to manipulate surveillance evidence, for example, by filming only the plaintiff's lifting of a heavy bag of groceries, but not the plaintiff's pain-riddled grimace. Thus, truthful plaintiffs, and not just potential perjurers, have a legitimate reason to inquire about the existence of such evidence.

Moreover, if defendants are not required to disclose the existence of surveillance evidence, plaintiffs will be forced to chose between mitigating their damages by attempting to work and go on with their lives in spite of their injuries, or being ambushed at trial by creatively-edited or otherwise manipulated surveillance evidence purporting to show that the plaintiff's injuries are not as severe as claimed. The defendant, however, often is not exposed to a parallel risk. For example, in cases where the plaintiff is injured on the defendant's property, the plaintiff generally must receive the defendant's permission before entering the property to inspect the condition of equipment or the site of the accident. The defendant, therefore, has an

opportunity to sanitize the premises, and will rarely be surprised by photographic evidence produced by the plaintiff. Thus, the Court believes that allowing a defendant to avoid disclosing the existence of surveillance until after the plaintiff's deposition, the procedure suggested by the Defendant and adopted by many courts, as discussed above, is weighted too heavily in favor of the defendant's need to protect the potential impeachment value of the evidence, at the expense of the plaintiff's right to discover relevant information.

Accordingly, the Court believes that a reasonable compromise between the Plaintiff's interests and those of the Defendant is to require the Defendant to disclose, before the taking of the Plaintiff's deposition, the existence of any surveillance evidence of the Plaintiff and the date on which the surveillance was obtained, and to indicate whether the surveillance is in the form of film, videotape, or still photographs.[4] However, the Defendant is not required to reveal the substance of the surveillance, where the surveillance was obtained, or the reason it was obtained. The actual surveillance evidence must be produced within thirty days *after* the Plaintiff's deposition has been taken.

The Defendant, however, contends that requiring it to divulge whether or not surveillance evidence exists requires it to reveal its strategy and thought processes to the Plaintiff; therefore, the fact of the existence or non-existence of surveillance is protected under the work product doctrine. The Court disagrees. It may well be that the decision about if, when, or how surveillance of a plaintiff should be conducted does reveal something about how the defendant's attorney investigates and prepares a case for trial. However, not every action that reveals, to some minimal degree, an attorney's general strategy or approach to a case amounts to protected opinion work product. For example, the manner in which an attorney phrases his answers to interrogatories may reveal, to some degree, the attorney's strategy in defending against the plaintiff's claims. Nonetheless, the attorney could not refuse to answer the interrogatories on the grounds of the work product doctrine. Thus, while re-

quiring the Defendant to disclose whether or not surveillance evidence exists may reveal the general strategy of the Defendant's attorney, "[i]t is simply too great a stretch to say, however, that opinion work product is also revealed." *Wegner,* 153 F.R.D. at 159; *cf. Ward,* 161 F.R.D. at 40 (as work product, surveillance materials are "entitled to only a qualified immunity since no mental impressions, conclusions, or legal theories of an attorney are implicated."); *Snead,* 59 F.R.D. at 150 n. 2 ("The mental impressions, opinions, and evaluations *of the [surveillance] films* would be exempt from discovery by Rule 26(b)(3)) (emphasis added).

Because surveillance films or photographs constitute substantive as well as impeachment evidence, the Plaintiff has a interest in timely learning of their existence so that he can properly prepare his case. However, because of the potential for surveillance films to provide compelling impeachment evidence, the Defendant has an interest in preserving their impeachment value by avoiding premature disclosure. The procedure outlined herein serves the Plaintiff's need to learn about relevant evidence in the hands of the Defendant, yet also preserves the impeachment value of the evidence. Moreover, this level of disclosure does not punish the Plaintiff for attempting to recover from his injuries and mitigate his damages, but does put the Plaintiff on notice that he will be called on to explain any actions that appear to be inconsistent with his claimed injuries. The Court believes that the procedure announced herein is consistent with the policies guiding the Fifth Circuit's decision in *Chiasson,* and represents the best compromise between the rights and interests of the parties. *See Wegner,* 153 F.R.D. at 160 ("The purposes of just and speedy determination of matters on the merits will best be served by requiring disclosure of surveillance in response to discovery requests.").

**IT IS SO ORDERED.**

---

4. In this case, the Plaintiff propounded discovery requests seeking information about any surveillance. By its ruling here, the Court is not requiring a defendant in another case to reveal the existence of surveillance evidence absent a proper discovery request from the plaintiff.