**ST. JAMES STEVEDORING CO., INC., et al,**

v.

**FEMCO MACHINE COMPANY.**

**Civil Action No. 96–3168.**

United States District Court, E.D. Louisiana.

June 23, 1997.

**432**

Terrence C. Forstall, Philip S. Brooks, Jr., Courtenay, Forstall, Hunter & Fontana, New Orleans, LA, for Plaintiffs.

Thomas J. Wyllie, Robert A. Vosbein, Jr., Adams & Reese, New Orleans, LA, for Defendant.

AFRICK, United States Magistrate Judge.

This matter is before the court pursuant to a motion to compel filed on behalf of defendant, Femco Machine Company ("Femco"). Pursuant to the instant motion, defendant seeks to have this court order plaintiffs, St. James Stevedoring Co., Inc. ("St.James") and St. Paul Fire and Marine Insurance Company ("St.Paul"), to produce copies of all of the documents listed on plaintiffs' privilege log.[1]

On September 29, 1995, an accident occurred when the boom of a crane sold by Femco to St. James fell, causing damage to both the crane and an adjacent vessel. On that same date, St. James hired Campana Marine Service, Inc. ("Campana") to investigate the accident.[2] Based upon its investigation, Campana prepared a marine survey report dated December 5, 1995.

■ Documents "are discoverable under the broad criterion of Rule 26(b)(1) unless they were prepared 'in anticipation of litigation or for trial' in which event additional showings must be made to obtain discovery." *Insurance Company of North America v. M/V Savannah*, 1995 WL 608295 at *1 (S.D.N.Y.1995) (*quoting* Rule 26(b)(3) of the F.R.Civ. P.) .[3] The burden of showing that

---

1. A copy of plaintiffs' privilege log is attached hereto. Listed on plaintiffs' log is a March 7, 1996, expert report prepared by Dr. Courtney Busch, along with correspondence from Dr. Busch dated March 8, 1997 and May 20, 1996. Since the filing of this motion, the court has been informed that plaintiffs will provide defendant with copies of Dr. Busch's engineering report and correspondence in light of the fact that these documents were utilized by another expert in preparing his expert report.

In addition to the documents listed on plaintiffs' privilege log, defendant also seeks copies of documentation regarding "any cargo loaded or unloaded from the vessels by the Lima 2400 crane prior to the incident forming the basis of this lawsuit." *See* defendant's request for production no 9. However, this issue is moot in light of plaintiffs' representation that responsive "documents are being compiled for production to Femco." *See* plaintiffs' opposition memorandum at p. 4.

2. Counsel, however, was not retained on behalf of St. James until June, 1996.

3. Although not argued by either plaintiffs or defendant, the possibility exists that rather than analyzing the discoverability of one of the disputed documents, the Campana survey report, under Rule 26(b)(3), the court could utilize Rule 26(b)(4)(B) which provides:

A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

The court has been informed that plaintiffs do not expect to call Captain R.L. Campana, the surveyor who prepared the pertinent report, as a witness at trial. Nevertheless, the court finds that Rule 26(b)(3) provides a more appropriate analysis in this instance. The survey report does not constitute the type of "expert report" contemplated by Rule 26 and this court's Civil Justice Delay Reduction Plan. This finding is supported by the factually similar cases of *M/V Savannah, supra,* and *Spaulding v. Denton*, 68 F.R.D. 342 (D.Del.1975), in which the respective courts utilized Rule 26(b)(3), as opposed to Rule 26(b)(4)(B), in determining the discoverability of marine survey reports conducted shortly after accidents.

the documents were prepared in anticipation of litigation and, therefore, constitute work product, falls upon the party seeking to protect the documents. *See Hodges, Grant & Kaufmann v. U.S. Government,* 768 F.2d 719, 721 (5th Cir.1985).[4]

In the context of a case involving reports prepared by a marine surveyor during a damage investigation, the following has generally been held:

> [S]o long as the surveyors are acting at the request of liability insurers, in a case where attorneys for the assured have not yet been appointed, and the surveyors do not report directly to counsel, the surveys are not regarded as "prepared in anticipation of litigation" even though an eventual suit ... is well within the bounds of reasonable possibility.

*M/V Savannah at *1 (citations omitted )*

The *M/V Savannah* court reasoned:

> [I]nsurance companies are in the business of paying an assured's just claim, or defending the assured from liability asserted by another. Where shortly after a casualty an insurance company retains a surveyor to conduct an investigation which will assist insurers in performing these or related functions, they are simply doing business as usual, and the documents generated thereby are not protected from discovery. Were the rule otherwise, ... documents prepared by or at the request of an insurance company, during the course of the insurance company's ordinary business of claim handling would shield from discovery all documents falling within that category by a ritualistic incantation of "anticipation of litigation."

> "At a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation. There is no hard and fast rule as to when this occurs." 82 F.R.D. at 708.

*M/V Savannah at *1 (quoting Westhemeco Ltd. v. New Hampshire Insurance Co.,* 82

F.R.D. 702, 708 (S.D.N.Y.1979)). Based upon this reasoning, the court determined that the shift from the ordinary course of business to anticipation of litigation had not occurred when damage was discovered "on December 28, 1991, and the survey was conducted on January 17 and 21, 1992, at the request of the liability insurers." *Id.*

Similarly, in *Spaulding,* 68 F.R.D. at 343–44, the accident occurred on December 19, 1971, the insurer learned of the accident on December 30, 1971, and engaged marine surveyors to investigate the matter. The marine surveyors issued three reports in letter form dated January 10, 21 and August 11, 1972. An officer of the insurer testified that while it was his company's ordinary course of business to investigate claims, this particular accident, involving the loss of life, "indicated substantial claims, and the likelihood of litigation." *Id.* at 344. He further stated that he contacted the marine surveyors and requested that they learn everything possible with regard to how the accident happened and why. Additionally, he testified that he could not recall such a thorough investigation being undertaken by his company in the past. However, it was undisputed that while the insurer obtained counsel to represent the insured in late January, 1972, counsel did not contact the marine surveyors nor did counsel participate in the investigations which produced the reports at issue.

The *Spaulding* court concluded that the first and second reports from the marine surveyors to the insurer, dated January 10th and January 21st, 1972, respectively, were the result of the insurer's "attempt to find out everything possible, as soon as possible, after the accident." *Id.* at 346. While the insurer knew at the time it hired the marine surveyors that "there would be some sort of claim," until more was learned about the accident "litigation was only a possibility. Indeed, acquisition of such knowledge would appear to have been the purpose of the first two [marine surveyor] reports." *Id.*[5]

---

4. Plaintiffs have informed this court via telephone that their objection to producing the requested documents is based solely upon the work product privilege.

5. In contrast, the court determined that the August 11, 1972, marine survey report was prepared in anticipation of litigation. . The court reasoned that at that time the claim was 7 months old, each side was represented by counsel although the marine surveyors were not sub-

Before this court can determine the discoverability of the documents at issue, the court must decide when litigation was reasonably anticipated. Such date is in dispute.

■ Plaintiffs assert that they reasonably anticipated litigation on September 29, 1995, the date of the accident.[6] In support, plaintiffs rely upon a September 29, 1995, facsimile ("fax") from Campana to Wright & Percy ("W & P"), the insurance agent for St. James. In this fax, Campana communicated that "St. James has placed the supplier of the crane, [i.e., Femco] on notice for any damages, costs, claims or delays that may result from the improper design." The fax also stated that "stress studies are being conducted by St. James to determine if the design is faulty."[7]

In contrast, defendant argues that the earliest date upon which plaintiff could have reasonably anticipated litigation was on or about March 8, 1996. In support, defendant relies upon the 30(b)(6) deposition testimony of St. James' corporate representative, Burt Gonzales. In his deposition, Mr. Gonzales indicated that St. James was unaware of the cause of the accident until its receipt of Courtney Busch's engineering report dated March 7, 1996 and forwarded on or about March 8, 1996.[8]

Also supporting defendant's argument that receipt of the Busch engineering report precipitated plaintiffs' reasonable anticipation of litigation is an October 2, 1995, fax from Campana to W & P. This fax states, in pertinent part, as follows:

I have requested from St. James Stevedoring that the pendant wire be sectioned and sent for analysis to determine the reason for failure. Courtney Bush [sic] can do this analysis and conclusively prove the cause of the failure. If it [is] as we believe, poor design and overloading by stress of the pendant wires, this will greatly aid in recovering costs from the original supplier of the crane, Femco. Until St. James Stevedoring can secured [sic] replacement parts from Femco, Femco will not be formally placed on notice as they are the only suppliers of these parts.

■ Based upon the above, the court finds that plaintiffs' receipt of Courtney Busch's report on or about March 8, 1996, is the proper date upon which litigation was reasonably anticipated. Prior to that date, the pertinent parties were investigating the matter in an effort to find out everything possible as soon as possible. The September 29, 1995, fax from Campana to W & P indicates that it was not yet known whether or not the design was faulty. While shortly after the accident it was known that there would be

ject to counsel's directions, and the insurer "had the advantage of the initial reports, and presumably gave new instructions based upon their contents. Given the advantage of prior investigative work and consultation with lawyers, the insurer's assertion that it was preparing for litigation [was] credible." *Id.* at 346 *(footnote omitted)*.

6. The instant action was not filed until September, 1996. However, this fact is not fatal to plaintiffs' argument that documents generated prior to that date are protected from discovery. "The fact that a document may have been created before a complaint was actually filed does not exempt it from the scope of the work product doctrine. Instead, the doctrine protects materials gathered 'in anticipation of litigation.' Fed. R.Civ.P. 26(b)(3). The fact that a lawsuit has not yet been filed is irrelevant—litigation need not necessarily be imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.' *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981)." *Smith v.*

*Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 584 n. 3 (S.D.Tx.1996).

7. Another fax dated September 29, 1995 to Neare, Gibbs & Co. ("Neare, Gibbs"), St. Paul's claims agent, from W & P provided, in part: "[W]e hope that you could issue a *"Letter of Intent"* to the ship agency to help reduce further cost involving attorneys ...." (emphasis original.) The above passage, however, was not intended to facilitate litigation, but rather represents an attempt to avoid it. A "Letter of Intent" is sent to a vessel owner when a party has accepted responsibility for damages sustained by the vessel.

8. Specifically, Mr. Gonzales testified as follows:

Q. When did you associate the extra load on the pendant cables with the bridle and mast configuration?
A. Through the engineering report from Courtney Busch.

*See* exhibit 1 attached to defendant's supporting memorandum.

some type of claim, until more was learned, in particular the cause of the accident, legal action was only a possibility.

Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)" are discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." [9] The court finds that the following documents listed on plaintiffs' privilege log generated after March 8, 1996, are protected from production pursuant to Rule 26(b)(3):

(1) 05/09/96 fax to St. James from W & P;

(2) 03/26/96 correspondence to W & P from Neare, Gibbs;

(3) 05/06/96 correspondence to W & P from Neare, Gibbs;

(4) 05/22/96 correspondence to W & P from St.

James; and

(5) 05/16/96 correspondence to Busch from St. James.[10]

Defendant has not presently made the necessary showing, as set forth under Rule 26(b)(3), to overcome plaintiffs' work product privilege. Accordingly;

**IT IS HEREBY ORDERED** that plaintiffs provide defendant, within seven days, with copies of all documents dated prior to March 8, 1996, listed on plaintiffs' privilege log.

**IT IS FURTHER ORDERED** that all disputed documents dated after March 8, 1996, listed on plaintiffs' privilege log are protected from discovery pursuant to the provisions of Rule 26(b)(3) of the Federal Rules of Civil Procedure.

---

**9.** In light of the court's finding that litigation was not reasonably anticipated until March 8, 1996, all documents listed on plaintiffs' privilege log dated prior to March 8, 1996, are not protected under the provisions of Rule 26(b)(3).

**10.** Documents (4) and (5) also contain conclusions and/or opinions of St. James' representatives regarding the Busch report. As such, these documents may be entitled to heightened protection. *See Smith,* 168 F.R.D. at 585.