Norman F. GUTSHALL, Plaintiff,

v.

NEW PRIME, INC. and Robert Tapper, Defendants.

No. Civ.5:99CV00023.

United States District Court, W.D. Virginia, Harrisonburg Division.

July 19, 2000.

Matthew W. Broughton, Harold David Gibson, Daniel Patrick Frank, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Plaintiff.

Randall Tyree Perdue, Timberlake, Smith, Thomas & Moses, PC, Staunton, VA, for Defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This case presents the questions of whether surveillance evidence conducted by a defendant in a personal injury case is discoverable if the defendant only intends to use the evidence for impeachment purposes, and whether such evidence is protected by the attorney work product doctrine. Finding that the federal discovery rules require discovery of such evidence, and that it is not protected by the work product doctrine, the court shall grant the plaintiff's motion to compel.

### I

On June 10, 1998, the plaintiff was operating a tractor-trailer on Interstate 80 in Lake County, Indiana, when he allegedly was rear-ended by another tractor-trailer, owned by defendant New Prime, Inc. ("New Prime"), and operated by defendant Robert Tapper ("Tapper"). The plaintiff sued on April 8, 1999, claiming that Tapper was operating his tractor-trailer within the course and scope of employment with New Prime, that Tapper's negligence caused back injuries the plaintiff suffered as a result of the accident, and that New Prime is liable under the doctrine of *respondeat superior*.

On April 15, 1999, the plaintiff served the following interrogatory on New Prime: "Please state whether or not you have conducted and/or obtained any surveillance of the plaintiff." On November 17, 1999, the plaintiff requested production of: "Documents and things . . . relating to any . . . visual depiction . . . of . . . any person involved in the collision, which is in your possession, to which you have access or of which you have knowledge." An accompanying interrogatory contains the same language.[1]

As of the date of New Prime's initial responses to these requests, New Prime had not conducted any surveillance, and properly responded that it had not. New Prime subsequently arranged for surveillance of the plaintiff from May 1 to June 1, 2000. The plaintiff noticed the surveillance on May 26, and so informed his attorney. Claiming that New Prime failed to supplement its discovery responses in compliance with Federal Rule of Civil Procedure 26(e)(2) by not producing the surveillance evidence, the plaintiff filed a "Motion to Compel Discovery Responses" on June 30, and a motion to exclude that evidence. Trial was scheduled to begin less than a month later, on July 26.

### II

Rule 26(a)(3) begins, "[A] party shall provide to other parties the following information regarding the evidence that it may present at trial *other than solely for impeachment purposes* . . . ." Fed.R.Civ.P. 26(a)(3) (emphasis added). New Prime argues that because Rule 26(a)(3) excludes information that will be used solely for impeachment purposes, which is the only purpose for which New Prime claims it intends to use the surveillance evidence, it was not required to produce that evidence pursuant to the document requests.

Rule 26(a)(3) does not describe the scope of discovery or exclude impeachment evidence therefrom; it describes the scope of automatic initial disclosure requirements. *See* Fed.R.Civ.P. 26(a) ("Unless otherwise directed by the court, these disclosures shall be made at least 30 days before trial."). The plaintiff does not assert that the evidence should have been produced because it fell within automatic initial disclosure requirements, but because it was responsive to two

---

1. New Prime challenges these requests as vague. Although boilerplate and complicated, the requests are not vague, and are broad enough to encompass surveillance evidence. New Prime also claims the requests are overbroad because they include production of visual depictions taken throughout the lives of any person involved in the accident. It being unlikely that New Prime possesses visual depictions of Mr. Tapper taken throughout his lifetime, the requests are not overbroad.

interrogatories and a request for production of documents. Therefore, New Prime's reliance on Rule 26(a)(3) is misplaced. The scope of discovery is described in Rule 26(b). That rule provides for very broad boundaries:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). Unlike subsection (a), subsection (b) does not distinguish between substantive and impeachment evidence. Rule 26(b) defines discoverable evidence as that which "appears reasonably calculated to lead to the discovery of admissible evidence." *Id. Cf.* Fed.R.Evid. 401 (defining relevant evidence as "evidence having *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (emphasis added)).

The Fourth Circuit has not addressed the issue of the discoverability of surveillance evidence in a civil case. The only case cited by New Prime, *Denty v. CSX Transportation, Inc.,* 168 F.R.D. 549, 550 (E.D.N.C. 1996), appears to be in the minority among the federal courts. *See, e.g., Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 517 (5th Cir.1993) (holding that surveillance evidence, proffered as impeachment evidence, is at least in part substantive, and discoverable, because a personal injury plaintiff's "severity of . . . pain and extent to which she has lost the enjoyment of normal activity are among the key issues a jury must decide in calculating her damages"); *Tripp v. Severe,* No. CIV.A.L–9–1478, 2000 WL 708807, at *1 n. 1 (D.Md. Feb.8, 2000) (holding that surveillance tapes only fall outside the scope of discoverable material if the defendant certifies it will not use the tapes for *any* purpose); *Gibson v. National R.R. Passenger Corp.,* 170 F.R.D. 408, 409 (E.D.Pa.1997) (holding surveillance evidence "plainly relevant" in personal injury context); *Ward v. CSX Trans., Inc.,* 161 F.R.D. 38, 39–40 (E.D.N.C. 1995) (rejecting similar Rule 26(a)(3) argument, and finding that 26(b)(1) includes surveillance materials even though they only were to be used for impeachment); *Blount v. Wake Elec. Membership Corp.,* 162 F.R.D. 102 (E.D.N.C.1993) (same); *Boyle v. CSX Trans., Inc.,* 142 F.R.D. 435, 437 (S.D.W.Va. 1992) (finding surveillance tapes discoverable notwithstanding impeachment possibility, emphasizing the pretrial need to determine whether the tape was altered or distorted); *Martin v. Long Island R.R. Co.,* 63 F.R.D. 53, 54 (S.D.N.Y.1974) (holding that federal civil discovery "is broad enough to include surveillance films").

As evidence that bears directly on the plaintiff's physical condition, the surveillance evidence is relevant to the subject matter of the case. Even though New Prime only intends to use such evidence at trial for impeachment purposes, the evidence falls within the broad scope of Rule 26(b)(1). "[W]hile surprise has a healthy prophylactic effect against possible perjury, on balance, cases are more likely to be decided fairly on their merits if the parties are aware of all the evidence." *Martin,* 63 F.R.D. at 54. The surveillance evidence being otherwise discoverable, the only remaining question is whether it is protected by the attorney work product doctrine.[2]

---

2. New Prime does not argue that the surveillance evidence should be excluded from the purview of Rule 26(b)(1) because it is privileged. The work product doctrine is not a "privilege," but a sort of "qualified immunity" from discovery, originally established in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and ultimately codified in Rule 26(b)(3). *See Chiasson,* 988 F.2d at 514 n. 2. Being relevant and not privileged, the evidence is discoverable under Rule 26(b)(1).

■ New Prime prepared, or commissioned the preparation of, the surveillance materials in anticipation of trial in this case. Consequently, those materials constitute "work product" that New Prime ordinarily would not be compelled to produce. *See* Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). However, even work product materials are discoverable if the plaintiff "has substantial need of the materials in the preparation of [his] ... case and that [he] ... is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). The Fourth Circuit has not addressed the applicability of the work product doctrine to surveillance evidence. The only case cited by New Prime, *Denty, supra*, appears to be at odds with the majority of cases that addressed the subject in its district. *See Ward v. CSX Trans., Inc.*, 161 F.R.D. 38, 39–40 (E.D.N.C. 1995) (holding that such evidence is not protected work product); *Ford v. CSX Trans., Inc.*, 162 F.R.D. 108, 111 (E.D.N.C.1995) (surveillance evidence, although work product, must be produced prior to trial); *Smith v. CSX Trans., Inc.*, No. 93–373–CIV–5–F, 1994 WL 762208 (E.D.N.C. May 18, 1994) (same); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102 (E.D.N.C.1993) (finding substantial need "since Plaintiff's past activities can no longer be filmed"). Most other federal courts have not found surveillance tapes to be protected work product. *See, e.g., Williams v. Picker Int'l, Inc.*, No. Civ.A.99–3035, 1999 WL 1210839, at *2–3 (E.D.Pa. Dec.2, 1999) (holding that surveillance evidence must be produced prior to the pretrial conference); *Bachir v. Transoceanic Cable Ship Co.*, No. 98 Civ. 4625 JFK HBP, 1998 WL 901735, at *1 (S.D.N.Y. Dec.28, 1998) (holding that surveillance evidence must be produced notwithstanding its work product status); *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582 (S.D.Tex.1996) (same); *Snead v. American Export–Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 151 (E.D.Pa.1973) (observing that even though the plaintiff may be unable to bend without pain, "under some particular circumstances he may have done so and this may be the very incident the camera recorded. ... there

is substantial need to have knowledge of the films for the preparation of the plaintiff's case").

The court agrees with the majority of courts that considered the issue, and finds that a plaintiff alleging claims for personal injury has a substantial need for surveillance evidence in preparing his case for trial, due to the relevance and importance of such evidence, and the substantial impact it may have at trial. Further, it is impossible to procure the substantial equivalent of such evidence without undue hardship, as videotape "fixes information available at a particular time and a particular place under particular circumstances, and therefore cannot be duplicated." *Smith*, 168 F.R.D. at 586 (citation omitted). Notwithstanding the work product status of the surveillance evidence, it therefore must be produced by New Prime pursuant to Federal Rule of Civil Procedure 26(e)(2). The plaintiff's motion to compel shall be granted. However, the plaintiff having cited no legal basis for excluding the surveillance evidence, his motion to exclude shall be denied.

### III

For all of the foregoing reasons, the plaintiff's Motion to Compel Discovery Responses shall be granted, and his Motion to Exclude Surveillance Evidence shall be denied. An appropriate Order this day shall follow.