SUPERIOR COURT
OF THE
STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
302-735-2111

August 30, 2017

Francis J. Murphy, Esq.
Kelley M. Huff, Esq.
Murphy & Landon
1011 Centre Road, Suite 210
Wilmington, DE 19805

Lorenza A. Wolhar, Esq.
Bradley J. Goewert, Esq.
Marshall, Dennehey, Warner, Coleman &
Goggin
1007 North Orange Street, Suite 600
Wilmington, DE 19899-8888

RE:  *Regina Woodstock, Individually, and as Administratrix of the Estate of Ethelynn E. Woodstock, Deceased v. Wolf Creek Surgeons, P.A. and Wendy S. Newell, M.D.*
*C.A. No. K14C-07-027 JJC*

Submitted: August 23, 2017
Decided: August 30, 2017

Counsel:

This case involves wrongful death and survivorship claims based on alleged medical negligence surrounding the death of Ethelynn Woodstock. Trial is set for September 18, 2017. This letter sets forth the Court's decision regarding two motions *in limine* and one outstanding discovery issue.

First, Plaintiff Regina Woodstock (hereinafter "Ms. Woodstock"), both individually and as the administratix of her mother's estate, seeks an order permitting

her to use evidence of (1) an alleged prior medical negligence claim against Dr. Wendy Newell, and (2) Dr. Newell's prior testimony in a medical negligence case. Ms. Woodstock argues that these matters are relevant to show Dr. Newell's bias because she is identified as a potential expert witness. Second, Ms. Woodstock requests an order precluding references at trial to her counsel's prior consultation with a defense expert regarding a wholly separate matter. Third, after argument at the pretrial conference, Ms. Woodstock seeks a discovery sanction precluding Defendants Dr. Newell and Wolf Creek Surgeons, P.A. (hereinafter collectively "Dr. Newell") from using written materials not produced during discovery to impeach Ms. Woodstock's witnesses. Ms. Woodstock specifically requested such information in discovery. Dr. Newell objected to the requests.

For the reasons set forth below, Ms. Woodstock is barred from both offering substantive evidence regarding Dr. Newell's alleged prior medical negligence and from using such evidence for impeachment. Ms. Woodstock, however, is not barred from introducing or using Dr. Newell's prior testimony or statements, provided they are otherwise admissible. Furthermore, Dr. Newell is barred from referencing Ms. Woodstock's counsel's prior consultation with one of Dr. Newell's expert witnesses. Finally, with regard to the discovery issue, both parties shall exchange any documents, transcripts, or writings that they will rely upon for purposes of impeachment that are not otherwise privileged, by no later than September 11, 2017. Thereafter, use of any documents not produced shall be barred from use at trial absent good cause shown, and first addressed outside the presence of the jury.

### In this case, evidence or questioning regarding prior medical negligence claims against Dr. Newell is inadmissible as either substantive evidence or for impeachment purposes.

Ms. Woodstock seeks leave to use certain evidence if Dr. Newell testifies as an expert at trial. Namely, Dr. Newell was allegedly named as a defendant in a prior

medical negligence suit and may have provided expert testimony in at least one medical negligence case. In her written motion, Ms. Woodstock first argued that if Dr. Newell offers testimony as an expert, this evidence should be admissible to show bias, motive, and competency.[1] She sought to offer this evidence pursuant to Delaware Rule of Evidence 404(b) (hereinafter "Rule 404(b)") as both substantive evidence and for impeachment purposes.

At oral argument, Ms. Woodstock clarified that she will not offer alleged prior conduct as substantive evidence. Rather, she argues that if Dr. Newell offers expert testimony and was subject to a prior malpractice claim, she may be biased to an even greater degree than the typical defendant. In response, Dr. Newell argues that this evidence is not relevant. Moreover, she argued in her written motion that the evidence does not satisfy the *Getz* factors the Delaware Supreme Court established as guidelines for a Rule 404(b) analysis.[2] Finally, Dr. Newell argues that even if this evidence was relevant, it would unfairly prejudice her and such prejudice would substantially outweigh any probative value. Therefore, she argues that this evidence is inadmissible under Delaware Rule of Evidence 403 (hereinafter "Rule 403").

---

[1] Ms. Woodstock subsequently amended her proffer to advocate its use only for purposes of impeachment to show bias. For that reason, the court only addresses the proffer on that basis.

[2] *See Getz v. State*, 538 A.2d 726, 734 (Del. 1988). The guidelines established in *Getz*, in the criminal context, include:

> (1) [t]he evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue. (2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition. (3) The other crimes must be proved by evidence which is plain, clear and conclusive. (4) The other crimes must not be too remote in time from the charged offense. (5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403. (6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.

*Id.*

While Rule 404(b) most often arises in criminal cases, it applies equally in the civil context.[3] However, since bias related impeachment is at issue, Rule 404(b) is not the appropriate yardstick. Impeachment evidence of prior conduct to show bias does not implicate the separate relevance analysis of Rule 404(b).[4] Instead, Rule 404(b) deals with *substantive evidence* offered for a purpose other than to prove the character of a person to show action in conformity therewith.[5] Here, the Court's analysis must focus on Delaware Rules of Evidence 401 and 403.

In support of her position, Dr. Newell cites *In re Servino v. Medical Center of Delaware, Inc.*[6], where the court analyzed a similar argument under Rules 401 and 403. There, the court found that evidence of a hospital's prior negligence was not relevant and even if it was relevant, that relevancy would be substantially outweighed by its unfair prejudicial value.[7] In the *Servino* case, the court based its decision, in large part, on the fact that there was "minimal evidence available regarding the [prior] case."[8]

Ms. Woodstock seeks to distinguish that case because it does not address the issue of whether a defendant doctor who provides expert medical opinion testimony, as opposed to factual testimony, is open to the same scope of cross-examination as the other medical experts in the case. She is correct, in part. *Servino*, however, is still supportive of Dr. Newell's position. Namely, in *Servino*, the lack of detailed

---

[3] *Mercedes-Benz of North America, Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1365 (Del. 1991).

[4] *See Gregory v. State*, 616 A.2d 1198, 1203 (Del. 1992) (holding in the parallel context of impeachment by crimes of dishonesty, that reliance on the *Getz* factors is misplaced*); see also Wilkinson v. State,* 929 A.2d 1111, 2009 WL 2917800, at *2 (Del. Sept. 14, 2009) (noting that impeachment evidence is not analyzed under Rule 404(b)).

[5] D.R.E. 404(b).

[6] 1997 WL 528037, *2–6 (Del. Super. Ct. Mar. 4, 1997).

[7] *Id.*

[8] *Id.* at *2.

information regarding the prior claim made the prior conduct irrelevant. Here, the parties provided even less detail regarding the prior case or cases involving Dr. Newell. The Court is unaware of the nature or outcomes of Dr. Newell's prior suit or any accompanying claims. Accordingly, the same evidentiary problems that arose in the *Servino* case are present to a greater extent in this case.

The burden is on the proponent of the evidence to structure an offer of proof demonstrating the relevance of the evidence.[9] Here, the Court cannot fully weigh the probative value of this evidence for purposes of impeachment. Nevertheless, the threshold for relevance is not high. The Court acknowledges that, as a general rule, bias is always relevant,[10] and even without more information regarding the prior matter, use of this evidence for impeachment purposes would, to a minimal extent, assist the jury in determining Dr. Newell's bias if she testifies as an expert witness.[11]

For purposes of a Rule 403 balancing test, however, minimal probative value is all that can be assigned to such evidence. Here, the substantial risk of unfair prejudice significantly outweighs it. Namely, any reference to the fact that Dr. Newell was a named defendant in a prior health care negligence case would be highly prejudicial.[12] Since the proponent did not provide the Court with details surrounding Dr. Newell's prior medical negligence claims or their propensity to generate bias under the particular circumstances of this case, the Court is left to speculate regarding the significance of the evidentiary connection. Instead of assisting the jury, this evidence will likely excite the jury's prejudice and mislead it.[13] As a result, this unfair prejudice substantially

---

[9] *Minner v. American Mortg. & Guar. Co.*, 791 A.2d 826, 843 (Del. Super. Ct. 2000).

[10] *Weber v. State*, 457 A.2d 674, 680 (Del. 1983).

[11] *See Persichini v. William Beaumont Hosp.*, 607 N.W.2d 100, 106 (Mich. Ct. App. 1999) (holding that evidence of prior malpractice actions against a witness is minimally probative of bias but not relevant to the witness's competency or knowledge).

[12] *Lai v. Sagle*, 818 A.2d 237, 248 (Md. 2003)

[13] *Id.*

outweighs its minimal probative value, making it inadmissible for impeachment purposes pursuant to Rule 403.

Dr. Newell's testimony or statements made in previous cases are a different matter, however. While evidence that Dr. Newell may have been the subject of prior medical negligence suits or claims is not admissible, her prior testimony in previous matters may be. That will depend on whether the prior statements are relevant as substantive evidence or for impeachment purposes, and are otherwise admissible under the Rules of Evidence. In furtherance of this Order, the parties must refrain, however, from referencing the source of any such testimony or statement before the jury.

Finally, Ms. Woodstock argues, in the alternative, that fairness dictates that Dr. Newell not be permitted to impeach Ms. Woodstock's expert witnesses by referencing their alleged prior medical negligence. Here, Ms. Woodstock is correct in that, for purposes of impeachment of experts, the same relevance analysis applies. It has, at a minimum, some relevance to bias. A defendant-expert and a non-party expert require a different Rule 403 analysis, however. On one hand, the propensity for unfair prejudice would be higher regarding a doctor-defendant than regarding a typical expert witness. On the other hand, given the Court's ruling applicable to the doctor-defendant in this case, the Court recognizes that there would be a heightened level of unfair prejudice to Ms. Woodstock as well.

In recognition of the later, if Dr. Newell seeks to impeach Ms. Woodstock's experts in a similar manner, she must first raise the issue outside the presence of the jury. Since this was Ms. Woodstock's motion, Dr. Newell has not had the opportunity to establish the relevance of any such impeachment evidence for purposes of weighing it against Rule 403 concerns. The Court's decision on that issue must await further evidentiary context.

6

**Evidence that plaintiff's counsel consulted with a defense expert on a prior unrelated matter is inadmissible.**

Ms. Woodstock's second motion *in limine* seeks to exclude evidence that one of her attorneys consulted with one of Dr. Newell's expert witnesses on a prior, unrelated matter. She argues that such evidence is not relevant because it does not make any fact of consequence to this case more or less probable. She also argues that this would require impermissible vouching by an attorney regarding a witness's credibility. Finally, she argues that any possible probative value would be substantially outweighed by its unfair prejudicial effect.

In response, Dr. Newell argues that this evidence is relevant and should be admissible. She argues that when Ms. Woodstock challenges the credibility of her expert, as certainly will be the case, such evidence will be admissible to rehabilitate her expert. She argues that this evidence will assist the jury in assessing the witness' credibility.

Dr. Newell correctly argues that the independence of an expert witness in a medical negligence lawsuit, including his or her willingness to review a case regardless of the referring party, is relevant and probative to the credibility of that witness, if attacked. However, the Court finds that showing that Ms. Woodstock's attorney consulted with Dr. Newell's experts on a prior unrelated case offers nothing to make the existence of any fact of consequence more or less probable. Namely, the Court finds that this evidence addresses witness credibility in an inadmissible manner. In the Court's judgment, Dr. Newell seeks to generate an inference by the jury that because *plaintiff's counsel finds the defense expert to be credible,* the jury should also find that expert to be credible.[14] Although this may not constitute direct vouching, the real purpose for offering such evidence would be to persuade the jury to infer that Ms.

---

[14] *See Doochack v. Hobbs*, 645 A.2d 568, 1994 WL 237597, at *5 (Del. May 18, 1994) (quoting *Joseph v. Monroe*, 419 A.2d 927, 930 (Del. 1980)) (stating that "it is improper for counsel to comment on the credibility of witnesses").

Woodstock's counsel found the defense expert witness credible enough to consult him. As such, it constitutes, at a minimum, a call for an inference that counsel vouches for a witness' credibility. Since the Court finds this purpose to be irrelevant to any matter of consequence, this evidence is not admissible.[15]

Even if this evidence contained any marginally probative value, its limited probative value would be substantially outweighed by the danger of unfair prejudice and confusion of the issues.[16] If this evidence were admissible, it would focus the jurors' attention on a matter not relevant to the case. Namely, it would naturally draw the jurors' attention to counsel's prior contact with the defense experts and cause speculation, which is clearly not relevant to Dr. Newell's level of care. Therefore, this evidence would be alternatively inadmissible under Rule 403.

Accordingly, Ms. Woodstock's motion to preclude this evidence at trial is granted. This ruling, however, does not bar Dr. Newell from rehabilitating her witnesses with other evidence offered to rebut attacks against her expert's credibility, provided such evidence is otherwise admissible. In this regard, the ruling is limited and bars only evidence regarding the specific contact addressed by the Court.

**Both parties must disclose any documents that they intend to use to directly confront witnesses for impeachment purposes; this does not include work product.**

During the course of discovery, in March 2015, Ms. Woodstock made several document requests including requests for:

---

[15] D.R.E. 402.

[16] *See Peterson v. Willie*, 81 F.3d 1033, 1038 (11th Cir. 1996) (holding inadmissible evidence that defense expert was previously hired by plaintiff's counsel because the unfair prejudice resulting from disclosing this fact outweighed any probative value). In *Peterson* this issue arose in a case where the defense expert testified in the same case where he was originally consulted by the plaintiffs. *Id.* While, the Court believes that this fact makes such evidence more unfairly prejudicial than what it is confronted with here, the outcome remains the same. Any relevance that this evidence carries would be substantially outweighed by its resulting unfair prejudice.

(7) All documents, including any deposition transcripts, trial transcripts, reports, treatises, texts, reference works, scholarly authority, scholarly materials, or any other documents or information, upon which you intend to rely at trial, or that you will use in examining or cross-examining any witness at trial or at deposition.

. . .

[and that she] (26) Identify all documents that you are not producing on grounds that said document(s) are allegedly privileged because of work-product or attorney-client privilege.

Ms. Woodstock also sought similar materials through the use of interrogatories including requests that Dr. Newell:

(22) State the title, author or editor, periodical name and volume (if applicable) and publication date of each textbook, treatise, periodical, pamphlet or other publication that will be used by the defense in their case in chief, or during cross-examination at any deposition or at the trial of this case.

. . .

(34) Simultaneously with these interrogatories you are being served with a request for production of documents. With respect to any documents covered by this request for production but withheld under claim of privilege or work product protection, identify each such document on the basis on which the privilege or work product protection is claimed.

Dr. Newell responded to this discovery with objections that it was vague, overly broad, unduly burdensome, and beyond the scope of Superior Court Civil Procedure Rule 26 (hereinafter "Rule 26"). She also raises the work product doctrine as an objection. With regard to Ms. Woodstock's request for a privilege log, Dr. Newell responded to both requests maintaining that she did not refuse to disclose any documents based upon privilege.

Pursuant to the Court's scheduling order, discovery ended on November 21, 2016. On July 19, 2017, Ms. Woodstock served Dr. Newell with a request to

supplement prior discovery responses.[17]  On August 18, 2017, Dr. Newell provided a response restating her objections.   For the first time at the pretrial conference, Ms. Woodstock raised the issue that these materials were not disclosed.  Ms. Woodstock did not move to compel responses to these requests.  However, she argues that these materials are relevant and discoverable under the Delaware Rules of Civil Procedure.  Dr. Newell, on the other hand, maintains that documents to be used solely for impeachment are not discoverable and are protected by the work product doctrine.  Although these objections would have best been reviewed pursuant to a motion to compel, Ms. Woodstock seeks to preclude the use of any nondisclosed material pursuant to Superior Court Civil Rule 37(b)(2).

Analysis of this issue starts with recognizing the scope of discovery governed by Rule 26.  Rule 26(b)(1) provides that

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.[18]

The scope of discovery under this Rule is broad and far-reaching.[19]  Rule 26 contemplates a liberal standard designed to advance the purposes of discovery

---

[17] *See* Super. Ct. Civ. R. 26(e).

[18] *See* Super. Ct. Civ. R. 26(b)(1).

[19] *E.g. Levy v. Stern*, 687 A.2d 573, 1996 WL 742818, at *2 (Del. Dec. 20, 1996) (Table) (noting that the "discovery rules are to be afforded broad and liberal treatment"); *Hunter v. Bogia*, 2015 WL 5050648, at *2 (Del. Super. Ct. July 29, 2015).

including "reducing the element of surprise at trial."[20] There is nothing in the Rule that precludes discovery of materials used solely for impeachment purposes. Instead the language and purpose of this Rule dictate that evidence used solely for impeachment purposes is discoverable. While it does not appear that any Delaware court has addressed this issue, courts in other jurisdictions have considered whether impeachment evidence is discoverable. They predominantly find such material to be discoverable upon a party's request.[21]

Given (1) the purpose of the discovery rules, (2) their broad scope, and (3) that courts interpreting discovery rules containing similar language to Delaware's rule require disclosure of impeachment evidence upon specific request, the Court finds that evidence used solely for impeachment is discoverable pursuant to Rule 26(b)(1). While the Court acknowledges the adversarial nature of a trial and the purpose of impeachment, on balance, the Court believes that disclosure of this evidence furthers the purpose of the discovery rules to ensure that trials are decided fairly on the merits.

For these materials to be discoverable, they must fit within the scope of Rule 26. Therefore, the evidence must be relevant to the subject matter involved in the pending case. Dr. Newell argues that requests for prior transcripts and testimony in unrelated cases are not relevant to the subject matter at issue. She argues that the only matter at issue is whether Dr. Newell breached the standard of care when treating Ethelynn Woodstock. Accordingly, she argues that because these materials would only be used

---

[20] *Levy*, 1996 WL 742818, at *2; *Hamilton Partners, L.P. v. Highland Capital Mgmt., L.P.*, 2016 WL 612233, at *2 (Del. Ch. Feb. 2, 2016). While both of these cases interpret Court of Chancery Civil Procedure Rule 26(b)(1), the Court of Chancery Rule is identical to the Superior Court's rule.

[21] *See, e.g., Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001) (holding that the language of Rule 26 clearly allows for evidence used solely for impeachment to be discoverable); *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 516 (5th Cir. 1993) (stating that the federal rules promote broad discovery so it is likely that impeachment evidence would be discoverable); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp.2d 431, 436 (D. Md. 2006) (holding that upon a specific discovery request, a party must disclose impeachment evidence); *Gutshall v. New Prime, Inc.*, 196 F.R.D. 43, 45 (W.D. Va. 2000) (holding that evidence used solely for impeachment falls within the broad scope of Rule 26 and must be disclosed).

11

for impeachment and not a pivotal or substantive purpose, they are not discoverable. Here, the Court disagrees and finds that this evidence is relevant to the subject matter at issue. These requests are designed to identify evidence that could be used to attack the credibility of a witness providing substantive evidence.[22] Accordingly, as long as such material is not privileged, it is discoverable under this Rule.

The next level of analysis involves the work product doctrine. Rule 26(b)(3) defines the work product doctrine in Delaware. It provides that

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.[23]

Under this rule, only materials that are *prepared in anticipation for litigation* are protected under the work product doctrine.[24]

Dr. Newell's objection based on the work product doctrine has merit in part. Certainly, no notes of counsel or memoranda disclosing trial strategy are discoverable. Likewise, she need not disclose what portions of any documents, transcripts, or statements she may use to directly confront any witnesses. On the other hand, Ms. Woodstock's discovery requests sought items that Dr. Newell would seek to use to directly confront witnesses on cross-examination. These include prior trial and deposition transcripts from other matters. Additionally, it is possible that Dr. Newell's counsel will rely on reports, treatises, texts, reference works, scholarly authority,

---

[22] *See* James WM. Moore, *Moore's Federal Practice* 26-182 (3d ed. 2013) (examining Federal Rule of Civil Procedure Rule 26 and noting that the advisory committee notes list impeachment evidence among the types of information that are properly discoverable since it is relevant to the subject matter involved).

[23] Super. Ct. Civ. R. 26(b)(3).

[24] *Id.*

12

scholarly materials, case law, or other documents or information that were created separate and independent from this case. These items clearly do not fall under the work product doctrine because they were not created in anticipation of this litigation.

At this point, since no motion to compel was filed, Dr. Newell need not formally respond to Ms. Woodstock's interrogatories or requests for production. Discovery has passed. However, Ms. Woodstock's motion to preclude the use of these items was timely. In the interest of justice, the Court holds that Dr. Newell may not confront any witness with any documents, articles, statements, or transcripts not produced on or before September 11, 2017. The only exception to this ruling will be limited to Dr. Newell establishing, through good cause, why there was surprise or other unforeseen circumstances warranting non-production. In such a circumstance, any such request must be made outside the presence of the jury. Finally, this ruling in no way requires Dr. Newell to identify any portion of any documents she intends to use. Nor does it require the disclosure of any work product.

Finally, at the pretrial conference, the parties indicated that Dr. Newell also requested copies of all relevant documents. Although her request may not have specifically targeted impeachment materials as did Ms. Woodstock's, Ms. Woodstock must also produce any like materials she intends to directly confront Dr. Newell's witnesses with by September 11, 2017. Imposing this reciprocal obligation recognizes both (1) the good faith basis for Dr. Newell's objections and position since there is no Delaware authority on this issue, and (2) that Ms. Woodstock did not move to compel responses to her discovery prior to the pretrial conference but rather sought exclusion of any documents not produced.

## Conclusion

For the reasons set forth herein, Ms. Woodstock's motions *in limine* are Granted in part and Denied in part. Further, her motion to exclude materials Dr. Newell intends to use to confront her witnesses is Granted in respect to any such documents not

13

produced by September 11, 2017.  This Order also imposes reciprocal obligations and consequences upon Ms. Woodstock regarding any materials she seeks to use for impeachment purposes.

**IT IS SO ORDERED**

/s/Jeffrey J Clark